In re **FIRST HARTFORD CORPORA-TION, d/b/a Wyandotte Mills, Debtor.**

**Bankruptcy No. 81 B 10390 (EJR).**

United States Bankruptcy Court, S.D. New York.

Oct. 20, 1982.

Ballon, Stoll & Itzler, New York City, for debtor.

Angel & Frankel, New York City, for Creditors' Committee.

## DECISION ON MOTION TO DEFER INTERIM COMPENSATION TO A.E. GETZLER & CO. AND TO BALLON, STOLL & ITZLER, ESQS.

EDWARD J. RYAN, Bankruptcy Judge.

On February 20, 1981, First Hartford Corporation, doing business as Wyandotte Mills ("First Hartford"), filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 et seq. (the "Code"). Pursuant to section 1108 of the Code, First Hartford continued to operate its business and manage its property as a debtor in possession.[1]

Pursuant to an order of this court dated February 25, 1981, First Hartford was authorized to engage and retain the law firm of Ballon, Stoll & Itzler, Esqs., as counsel under a general retainer to represent it in its Chapter 11 case.

Shortly thereafter, on March 16, 1981, the court authorized First Hartford to factor its accounts receivable with James Talcott Factors, Inc. (the "Factor"). The Factor agreed to purchase the accounts receivable of First Hartford and to make advances thereon in return for obtaining a security interest in those accounts. The Factor was relegated to a subordinate secured position with respect to the Maine Guaranty Authority ("MGA"), the largest creditor of First Hartford holding claims against it in the approximate sum of $4,000,000. Any proceeds in excess of the position of MGA were subject to the lien of the Factor. The March 16, 1981 order also provided the Factor with a "super priority" administration claim pursuant to section 364(c) of the Code.[2]

An order dated May 11, 1981, authorized the Committee of Unsecured Creditors of First Hartford ("the Committee") to retain A.E. Getzler & Co., Inc. ("Getzler") to perform certain management consultation services.[3] The order fixed Getzler's maximum compensation at a sum not to exceed $25,000 plus out-of-pocket disbursements.[4]

---

1. First Hartford was generally engaged in the business of manufacturing textiles and selling woolen fiber.

2. 11 U.S.C. § 364(c) authorizes the debtor to incur secured, priority administration indebtedness.

3. These services included an evaluation of First Hartford's sales trends, production build-ups and efficiencies, purchase plans, inventory levels, gross profits, cash-flow projections and the value of real estate holdings.

4. Pursuant to court order dated September 1, 1981, the maximum compensation allowable to Getzler was increased to $45,000 plus reasonable out-of-pocket expenses.

It further granted Getzler leave to apply for interim compensation pursuant to section 331 of the Bankruptcy Code. Section 331 explicitly authorizes the bankruptcy court to grant interim compensation and provides, in pertinent part:

> ... [A]ny professional person employed under section 327 ... of this title may apply to the court ... for [interim] compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title .... [T]he court may allow and disburse to such applicant such compensation or reimbursement.

On August 31, 1981, Getzler filed an application for interim compensation pursuant to section 331 of the Code. Getzler sought the sum of $22,800 for professional management consultation services rendered, plus the sum of $1,707.28 for expenses. Supporting court records verify that the total interim allowance requested was the sum of $24,507.28.

An application of the Committee indicating its approval of the total interim allowance to Getzler was submitted to this court on October 21, 1981. At a hearing held pursuant to section 331 of the Code on November 30, 1981, First Hartford voiced objections to this application, arguing that the amount of compensation Getzler sought was excessive and totally out of line with reality.

In an objection filed with this court on the same day, First Hartford also maintained that the interim fees to Getzler should not be paid until all of the administrative claims [5] were paid in full, and, that First Hartford's current assets were insufficient to pay all the administrative claims.

On December 16, 1981, despite the objections of First Hartford,[6] this court signed an order (the "Order") awarding an allowance of interim compensation to Getzler in the amount of $22,800 for services plus an additional $1,707.28 for disbursements. Notices of motion requesting deferral of the interim compensation award were filed with this court by First Hartford and MGA on December 29, 1981, and December 30, 1981, respectively.

First Hartford sought a deferral of the interim compensation grant to Getzler until it was clear that it would realize sufficient monies from the liquidation of its assets [7] to pay in full all administrative claims pursuant to the provisions of section 503 of the Code. First Hartford maintained that at that time it did not have sufficient funds to make the payments to Getzler, which the December 16, 1981, order required. In fact, First Hartford indicated that it only had a current cash balance of $5,000 which was barely sufficient to meet operating expenses for the next two weeks.

The court recognizes that a debtor attempting to reorganize in this situation would be hard pressed to meet the payment of administration expenses while maintaining cash flow requirements for business.

The MGA motion on December 30, 1981, requested that the interim compensation awarded to Getzler be deferred until confirmation of First Hartford's Chapter 11 Plan of Reorganization. MGA claimed that the security interests of other secured creditors, including itself, would be seriously prejudiced if the award to Getzler were not deferred. MGA further maintained that as

---

**5.** Section 503 of the Code permits administrative expense claimants to file a request with the court for payment of an administrative expense. Section 503(b) provides in pertinent part:
> ... There shall be allowed administrative expenses ... including—
> (2) compensation and reimbursement awarded under section 330 of this title.

**6.** An examination by the court of records submitted by Getzler indicating services rendered and expenses incurred found no overcharge in either services or expenses. First Hartford's request for a reduction in the interim allowance to Getzler was therefore, denied.

**7.** On November 28, 1981, this court signed an order authorizing First Hartford to proceed with the liquidation of weaving, dyeing and finishing equipment and the sale of the manufacturing plant at its Waterville, Maine, facility.

a result of its present dispute [8] with First Hartford, it may have an administrative claim against the debtor and, thus, be directly prejudiced by any preconfirmation payment to Getzler.

■ The objection expressed by both First Hartford and MGA that a payment of interim compensation to Getzler would prejudice existing administrative and "super priority" claims is the primary issue in this case. Although courts have held that prejudice to a secured creditor is insufficient to preclude an award of interim compensation,[9] if the prejudice alleged involves administrative or other first priority claims under section 507(a)(1) of the Code, an award of interim compensation may be deferred.

Recently, it has been held that where there are insufficient funds in the debtor's estate to pay interim allowances, these allowances may be deferred until a time when unencumbered funds become available for payment. *Matter of Codesco, Inc.*, 15 B.R. 354, 8 BCD 482; 5 CBC 2d 738 (Bkrtcy.S.D.N.Y.1981).

Section 331 of the Bankruptcy Code authorizes the allowance of interim compensation, but does not mandate it. The purpose of section 331 of the Code is to "assure the continued efficient rendition of professional services to the state" [10] by providing interim relief to a bankruptcy attorney in a protracted reorganization proceeding. The interim allowance to Getzler constitutes an administrative expense under section 503(b)(2) of the Code and is accorded first priority status under section 507(a)(1) of the Code. Section 507(a)(1) of the Code, according administrative expenses first priority,

treats all such expenses equally. While the Bankruptcy Code does not specify a time for the payment of such expenses, Rule 308 of the Rules of Bankruptcy Procedure grants this court discretion in determining when dividends to creditors are to be paid.[11]

In summary, since there are presently no unencumbered assets in the First Hartford estate, any attempt to pay interim allowances would necessarily infringe upon existing administrative claims and other "super priority" interests. These interests include both the existing "super priority" claims of the Factor and the potential administrative claims of MGA.

■ The inability of First Hartford to pay all administrative claims in full, at this time, precludes an administrative expense claimant from asserting priority over another claimant of the same priority.

■ Subsequent to the Getzler application, the law firm of Ballon, Stoll & Itzler, counsel to First Hartford, filed an application on April 13, 1982, for an interim allowance and for reimbursement of expenses incurred in the total sum of $6,825.64, pursuant to sections 330 and 331 of the Bankruptcy Code. There is no question that the applicants have incurred substantial legal expenses since their retention. Moreover, these legal expenses are accorded a first priority status under section 507(a)(1) of the Code. Accordingly, the application of Ballon, Stoll & Itzler for interim compensation is granted. Payment of said interim compensation in the sum of $6,825.64 is deferred, however, until confirmation of First Hartford's Chapter 11 Plan of Reorganization for the reasons stated above.

---

**8.** The dispute between MGA and First Hartford involves, *inter alia*, whether MGA is a secured creditor of the debtor or a lessor of certain property to the debtor.

**9.** *See In re Wilson Freight Company*, 21 B.R. 398 (D.C.S.D.N.Y.1982), where the court indicated that a secured creditor could not preclude an award of interim compensation to counsel for the Unsecured Creditors' Committee solely on the objection that such award would reduce creditors' security interest in debtor's assets. *See also In re Louis Marx & Co., Inc.*, 80 B 10150 (S.D.N.Y. August 27, 1981), where Judge

Galgay awarded limited interim compensation to counsel for Unsecured Creditors' Committee, despite protestations of the secured creditor, on the basis that the secured creditor had directly benefitted (albeit reluctantly) from the persistent efforts of counsel for the Committee.

**10.** 2 *Collier on Bankruptcy* (15th ed.) ¶ 331.02, pp. 331–5 (n. 2).

**11.** 3 *Collier on Bankruptcy* (15th ed.) ¶ 503.02, pp. 503–5.

Consequently, the interim compensation awards in the respective sums of $24,507.28 to Getzler, and $6,825.64 to Ballon, Stoll & Itzler are deferred until confirmation of First Hartford's Chapter 11 Plan of Reorganization.

Settle an appropriate order.