In re MISTY TOUCH, INC., Debtor,

INTERNATIONAL FABRICS TRADING CORP., Plaintiff,

v.

MISTY TOUCH, INC., Defendant.

Bankruptcy No. 82 B 11642.
Adv. No. 82–6599A.

United States Bankruptcy Court,
S.D. New York.

July 20, 1983.

---

McDonough, Marcus, Cohn & Tretter, P.C., New York City, for plaintiff; Steven I. Tolman, New York City, of counsel.

Edwin L. Corwin, New York City, for defendant; Novalyn L. Winfield, New York City, of counsel.

### DECISION ON APPLICATION FOR PRELIMINARY INJUNCTION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Misty Touch, Inc. ("Misty Touch") moves for a preliminary injunction under Federal Rule of Civil Procedure 65 enjoining International Fabrics Trading Corporation ("International") from executing a judgment until a hearing may be held pursuant to Federal Rule of Civil Procedure 60(b) as to whether that judgment should be modified to stay execution thereon until a later date.

I

Misty Touch is a wholesale distributor of women's clothing and sells its products mainly to major department stores. It filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (Supp. V 1981) on August 24, 1982. Misty Touch has continued to operate as a debtor-in-possession and has orally proposed a plan for reorganization to its Creditors Committee. The plan has not been rejected or approved by the Creditors Committee. Record at 34.

Misty Touch has incurred monthly losses since filing its petition. It has had to pay post-petition suppliers of goods and services on a deferred basis. It appears that wages have been similarly deferred, and its president currently draws no salary. Its monthly operating expenses total approximately $18,500. Record at 13.

In December, 1982, International commenced an adversary proceeding against Misty Touch, seeking payment for $7,191 for goods ordered before but delivered after the petition date. On May 6, 1983, a hearing was held before the Honorable Edward J. Ryan, Bankruptcy Judge. He deter-

mined that International delivered goods to Misty Touch after Misty Touch filed its bankruptcy petition; that Misty Touch failed to pay for these goods; and that International was entitled to a judgment of $7,191. Thereafter, on May 17, 1983, judgment in that amount, plus interest at 9 percent, was entered by the Honorable John M. Cannella, Judge of the United States District Court, Southern District of New York, in favor of International against Misty Touch, providing that execution could issue.

On June 2, 1983, a United States Marshal served notice of execution of the judgment on The Slavenburg Corporation ("Slavenburg"). Slavenburg acts as Misty Touch's factor pursuant to a prior order of this Court. After it received the notice of execution, Slavenburg, apparently in accord with its factoring agreement, informed Misty Touch that it would not advance any further sums of money as a result of the execution by the United States Marshal.

Service of the notice of execution on Slavenburg sharply impaired Misty Touch's ability to continue in business. Pursuant to the terms of the factoring agreements, Slavenburg regularly purchases most of the debtor's accounts receivable and advances approximately 50 percent of the purchase price of these assets to Misty Touch. Record at 12–13, 28–30. But for service of the notice of execution, Slavenburg would have paid Misty Touch approximately $27,600 that Misty Touch is eligible to receive under the terms of the agreement. Record at 32. Misty Touch depends upon the advances it receives from Slavenburg for 25 to 30 percent of its monthly gross receipts. Misty Touch currently has only $200 in its bank account, and the loss of such a high proportion of its monthly income has substantially impaired its ability to meet its operating expenses and its ability to purchase goods from its suppliers.

Since the entry of the judgment, Misty Touch's financial picture has brightened a little. It appears from the testimony of its president that Misty Touch broke even in June, 1983 for the first time since it filed its petition. The debtor is to issue a new line of clothing in August the production of which, according to its president, should further improve its financial status. Record at 35.

On June 24, 1983, the Honorable William Conner, Judge of the United States District Court for the Southern District of New York, entered an order temporarily restraining International from enforcing the judgment pending a hearing before this Court on the debtor's request for a preliminary injunction.

This matter was heard by this Court on July 8, 1983. At the request of International, the debtor consented, upon the release of funds by Slavenburg, to pay $1,000 to International on or before July 22, 1983 and $1,000 for each of the three weeks thereafter, and this Court so ordered. Also scheduled for hearing on July 8, 1983 was the motion by the Official Creditors Committee to convert this proceeding to Chapter 7 of the Code. Upon the non-appearance of the Official Creditors Committee at the hearing, the motion was struck from the Court's calendar, only to be restored to the calendar upon the consent of the debtor for August 2, 1983.

II

To obtain a preliminary injunction in the Second Circuit, the moving party must demonstrate: possible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *United States v. Charmer Industries, Inc.*, 711 F.2d 1164, at 1168, n. 2 (2d Cir.1983); *Buffalo Courier-Express v. Buffalo Evening News*, 601 F.2d 48, 54 (2d Cir.1979); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (*per curiam*); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1358 (2d Cir.1976). See, Mulligan, *Forward: Preliminary Injunction in the Second Circuit*, 43 Brooklyn L.Rev. 831 (1977).

■ Upon examination of the record, this Court finds that the standards for preliminary relief have been met.

### A

A demonstration of irreparable injury is the first criterion for issuing a preliminary injunction in this circuit. To determine whether this condition is met, it is useful to examine several benchmarks. First, there must be a likelihood that irreparable injury will occur; speculative injury is not sufficient. *New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 755 (2d Cir.1977). *See, e.g., Crimmins v. American Stock Exchange, Inc.,* 346 F.Supp. 1256, 1262 (S.D.N.Y.1972). In this case, it was essentially conceded at the hearing that the injury to Misty Touch from the failure to receive payments from its factor is not some remote, future injury, but is present and direct: absent receipt of those funds, Misty Touch will be unable to fill the orders necessary for it to remain in business.

■ Another important touchstone of possible irreparable injury is the speed which the moving party takes to obtain injunctive relief. A long delay by the movant after learning of the threatened injury may be taken as an indication that the injury is not serious enough to warrant injunctive relief. *E.g., Klauber Brothers, Inc. v. Lady Marlene Brassiere Corp.,* 285 F.Supp. 806 (S.D.N.Y.1968) (suit brought one year after infringement discovered); *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 273 F.Supp. 250 (S.D.N.Y.1967) (five year delay during pendency of suit before request for preliminary injunction).

Here Judge Cannella granted judgment for International and directed that execution issue. Misty Touch applied for a preliminary injunction on June 23, 1983, shortly after Slavenburg had been served with the notice of execution and Slavenburg informed it that no more funds would be advanced. This diligence is indicative of the serious harm which threatens Misty Touch.

■ But, diligence does not transform an injury redressable by money damages into irreparable injury. While it would seem that Misty Touch's lost orders during the pendency of a Rule 60(b) hearing to modify the judgment could be recompensible in money damages, far more is at stake here. Basically, Misty Touch argues that in view of its precarious financial position, the failure to continue to receive funds from its factor will entail the destruction of its business as a Chapter 11 debtor, preclude it from reorganizing itself and likely require its liquidation.

■ In this circuit, an act which threatens to destroy an ongoing business can cause that business irreparable injury. *John B. Hull v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24, 28–29 (2d Cir.1978); *Semmes Motor, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir.1970); *Newport Tire & Rubber Co. v. Tire & Battery Corp.,* 504 F.Supp. 143, 149 (E.D.N.Y.1980); *Janmort Leasing, Inc. v. Econo-Car Inter-National, Inc.,* 475 F.Supp. 1282, 1294 (E.D.N.Y.1979). If, however, the act threatens only the disruption of an ongoing business as opposed to its destruction, an adequate remedy at law, in money damages, exists and irreparable injury is absent. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70 (2d Cir.1979); *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.,* 604 F.2d 755 (2d Cir.1979).

The argument that the business of a debtor is threatened with destruction may seem somewhat circular in nature; it, however, is no more so than the soft-headed victim of negligence postulated in *Dulieu v. White & Sons,* (1901) 2 K.B. 669, 679. In either case, that the victim of an act is in a weakened condition does not reduce the causative effect of the act. *Id.* at 679.

Moreover, that a company is in Chapter 11 hardly means that its business cannot be destroyed. Indeed, the purpose of Chapter 11 is to afford a period where the business continues to function so that it can be determined if effective reorganization is possible. The destruction of that opportunity

differs little from the destruction of the business itself.

Since Slavenburg will not advance any funds to Misty Touch, Misty Touch is threatened with destruction. International has not contended otherwise. Here, with funds from Slavenburg, Misty Touch has made at least a preliminary showing that its ability to function is severely impaired and that a continuing lack of funds puts Misty Touch's attempt to reorganize itself in jeopardy. It needs the cash advances from its factor in order to stay in business through July and into August, when its new clothing line comes out. The evidence adduced at the hearing is to the effect that without the injunction, International's demand for execution will precipitate the liquidation of Misty Touch and thereby destroy its prospects for reorganization. This destruction amounts to far more than the mere disruption of a business.

B

█ The debtor has also demonstrated a fair probability of success on the merits on its claim that on the basis of new evidence the judgment should be modified to stay execution for a brief period, at least until August 2, 1983, when the motion by the Official Creditors Committee to convert this proceedings to Chapter 7 is now scheduled to be heard, in order to determine if rehabilitation is in the offing. Pursuant to Section 1129(a)(9)(A) of the Bankruptcy Code, administrative claims are to be paid under a confirmed plan on the effective date of the plan. Nothing, however, precludes the Bankruptcy Court from ordering earlier payment and earlier payment is often awarded. The time of payment is wholly within the discretion of the Bankruptcy Court. *See, e.g., In re Fireside Office Supply Co.,* 17 B.R. 43, 8 Bankr.Ct.D. 202, 5 Collier Bankr.Cas.2d 111 (Bkrtcy.D.Minn. 1981); *In re Kors, Inc.,* 13 B.R. 683, 5 Collier Bankr.Cas.2d 872 (Bkrtcy.D.Vt.1981).

In exercising that discretion in a case such as this involving the debtor's acquisition of goods after the petition date, three strong policies can be easily gleaned. First,

Chapter 11 in appropriate circumstances, contemplates an examination of whether the debtor can effectively reorganize itself to the satisfaction of at least one class of its creditors. *Cf.* § 1111(b)1. Second, to enable a Chapter 11 debtor, vested with authority to operate the business, to enter into agreements to pay for goods as they are shipped or on usual commercial terms and then to refuse to pay until confirmation of a plan would seriously discourage members of the business community from doing business with Chapter 11 debtors. *In re Isis Foods, Inc.,* 19 B.R. 329, 6 Collier Bankr. Cas.2d 620 (Bkrtcy.W.D.Mo.1982), *aff'd* 27 B.R. 156 (W.D.Mo.1982). Third, if some administrative claimants are to be paid during the proceeding, others should not have to await confirmation to be paid. *Isis Foods, Inc.,* 27 B.R. at 158, for payment to some should not jeopardize payment to others. *In re First Hartford Corp.,* 23 B.R. 729 (Bkrtcy.S.D.N.Y.1982).

Here, the motion to convert the proceeding to Chapter 7, at which the debtor's ability to reorganize itself will be directly at issue, is scheduled to occur in two weeks. Moreover, the debtor has consented to make payments to International during the proceeding, and this Court has so directed. Payments to other post-petition suppliers have been deferred. While the deferral is not as lengthy as that ordered with respect to the sums owed International, it, like them, will not have to await confirmation to be paid.

Finally, since the judgment was entered, the creditors have entered into negotiation of a plan of arrangement with the debtor. The debtor has made a preliminary showing that the pattern of losses that might be grounds for conversion to Chapter 7 may be temporarily halted, and that it may have immediately brighter prospects.

These facts lend support to the notion that in this particular case modification of the judgment would be appropriate to preclude its enforcement for a brief period to determine if, in light-of these facts and other evidence permitted under Rule 60(b), there is a likely prospect of reorganization.

They thus would indicate probable success on the merits. Indeed, it would seem that it was for the precise reason of making that analysis that Judge Conner entered the temporary restraining order and directed that the preliminary injunction hearing be held in this Court before the Judge to whom the bankruptcy proceeding is assigned, rather than to Judge Ryan who, during the temporary assignment of the proceeding to him, heard the adversary proceeding.

## C

In any event, it appears that the debtor has raised sufficiently a serious question going to the merits as to make them a fair ground for litigation and that the balance of hardships tips decidedly in favor of the debtor, thus making the entry of a preliminary injunction appropriate. *See, e.g., Packard Instrument Co. v. Ans, Inc.,* 416 F.2d 943, 945 (2d Cir.1969); *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 743 (2d Cir.1953). From the discussion above, it is obvious that these questions are serious and constitute a fair ground for litigation. We turn, therefore, to an evaluation of the severity of the impact on International should the temporary injunction be granted, and the hardship that would occur to Misty Touch if the injunction is denied.

International urges this Court to deny injunctive relief because it fears that Misty Touch will be forced to convert to Chapter 7 and, also, because of the delay in payment. Upon liquidation, it argues, there is no assurance that Misty Touch will be able to pay administrative claims in full. This latter reason, however, is cause to defer payment to International. As this Court has ruled, in deferring payment of administrative claims:

"The inability of First Hartford to pay all administrative claims in full, at this time,

precludes an administrative expense claimant from asserting priority over another claimant of the same priority." *Hartford,* 23 B.R. at 732.

In contrast, it appears that Misty Touch will be gravely injured unless the notice of execution is stayed until August 2, 1983 at which time the Rule 60(b) hearing will be held and the motion to convert the proceeding to Chapter 7 will be heard. That brief delay in no way compares to the destruction of Misty Touch's chances of reorganization during the period it is negotiating with its creditors.

## III

From this review, it is clear that Misty Touch will be more severely prejudiced by a denial of the injunction than International would be by its grant. International has a priority administrative claim which must be paid in full if a Chapter 11 plan is confirmed. If this Court does not grant relief, Misty Touch will suffer irreparable injury and will likely have to convert to Chapter 7. Coupled with the demonstration that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation," an injunction for a brief period is appropriate. There is no evidence that Misty Touch is not making a good faith attempt to reorganize. The evidence that it has orders from large department stores, who are responsible customers, is evidence that it may survive. It has demonstrated that there may be grounds to modify the judgment so as to stay its execution for a brief period under Federal Rule of Civil Procedure 60(b)(2) [1] or (b)(6). [2]

The foregoing constitutes this Court's findings of facts and conclusions of law. The requirement of security is waived pursuant to Federal Rule of Bankruptcy Procedure 765. The hearing under Rule 60(b) is

---

1. Federal Rule of Civil Procedure 60(b)(2) permits relief on grounds of new evidence.

2. Federal Rule of Civil Procedure 60(b)(6) allows a court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." This

section "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949).

set for August 2, 1983 at 10:00 a.m. or as soon thereafter as counsel can be heard.

It is so ordered.