**In re NANA DALY'S PUB, LTD., Debtor.**

**Bankruptcy No. 184–41772–260.**

United States Bankruptcy Court, E.D. New York.

Dec. 2, 1986.

Weiner & Silverman by Bruce Weiner, New York City, for debtor.

Barry R. Feerst, New York City, for Susan von Ohlen.

### DECISION AND ORDER IN SUPPORT OF CERTIFICATE OF CONTEMPT

CONRAD B. DUBERSTEIN, Chief Judge.

Nana Daly's Pub, Ltd. (hereinafter "debtor" or "Nana Daly's") filed a voluntary petition for relief under Chapter 11 on November 21, 1984. Susan von Ohlen (hereinafter "von Ohlen") represented the debtor until she was substituted by Weiner & Silverman, Esqs. on February 18, 1986.

This opinion follows a motion brought by the debtor and its new counsel who replaced von Ohlen. The motion sought an order to punish her for contempt for failure to obey an order of this court dated October 1, 1986. It directed her to repay the debtor $6,150 in legal fees she received after the bankruptcy petition petition was filed, without application to this court and without its permission. The court granted the motion to the extent that it issued a Certificate of Contempt to the District Court. The District Court now has for consideration whether or not she should be punished for contempt as well as the extent of her punishment. This follows a practice adopted by the Bankruptcy Judges of this District based upon their opinion that until otherwise decided by the District Court and subject to any further decision by a court of higher appellate jurisdiction, they do not have the power to punish for contempt. *See, e.g., Matter of Kalpana Electronics, Inc.*, 58 B.R. 326 (Bkrtcy.E.D.N.Y.1986).

In passing upon the issue presented to it, this court reviewed the following factors as well as the pertinent history of this case which it recites to assist the reviewing court in its ultimate determination.

## FACTS

At the time of the filing of the bankruptcy petition and prior thereto since October, 1980, the debtor had been engaged in the business of owning and operating a bar and grill in Brooklyn. James Carlton was its principal officer, stockholder and director. His wife Mary assisted him in the business; she was authorized to sign checks on the debtor's bank account and was also familiar with its books and records. The property in which the debtor's premises was located was owned by James Carlton and the debtor occupied it under an oral month-to-month lease at $2,750 per month.

Shortly prior to the filing of the bankruptcy petition the State of New York closed the premises for failure to pay sales and other taxes amounting to about $57,000 and took steps to sell the assets of the business to satisfy its claim. Notice of the impending sale came to the attention of one Marvin Pollack (hereinafter "Pollack") who apparently is engaged in the business, *inter alia*, of informing delinquent tax payers of the advantages offered by the bankruptcy laws and its provisions which can prevent such a sale while enabling the debtor-taxpayer to reorganize.

Pollack sent the Carltons a letter concerning Nana Daly's problem. His letterhead bore the words "Counsellor at Tax" below his name. He described himself as a tax consultant and offered his services with the view of saving their business. The Carltons accepted his offer of help. (S.M.P. 6/4/86 at p. 31).

Pollack arranged to have them meet him on November 19, 1984. He introduced them to von Ohlen whom he identified as an attorney and also his wife. (During the course of this case both of them admitted that they were not married at that time nor have they ever been married). Pollack suggested that von Ohlen could help the debtor with its legal problems. Later that same day the Carltons met with them at which time the Carltons signed many papers relating to the debtor, most of which were retainers. (S.M.P. 6/4/86 at p. 32).

At about this time, the Carltons paid von Ohlen $4,150 on account of her legal fee. They also paid Pollack $750 as his retainer for his non-legal services. The monies paid to both were borrowed by the Carltons from their daughter inasmuch as the debtor had no such sums available.

Thereafter von Ohlen prepared the Chapter 11 petition which she filed in this court on November 21, 1984. Both she and Pollack, accompanied by the Carltons, then went to the Manhattan office of the State Tax Department. After providing it with proof of the filing of the petition, they received the keys to the debtor's premises thereby allowing it to reopen and commence business. (S.M.P. 6/4/86 at p. 37).

As permitted by the Bankruptcy Rules and the Bankruptcy Code, von Ohlen obtained an extension of time to file a full set of Schedules of Assets and Liabilities,

Statement of Affairs and Statement of Executory Contracts. They were all filed on December 27, 1984 as required by the court's order of extension.

The Statement of Affairs recited that James Carlton had personally agreed, on behalf of the debtor, to pay von Ohlen a retainer of $10,000 "from funds *not* of the debtor." (Emphasis in original). (Statement of Affairs dated 12/27/84, Answer to question 20).

On January 3, 1985 von Ohlen filed with this court a Statement under Bankruptcy Rule 2016(b), as required by that Rule and pursuant to § 329 of the Bankruptcy Code. The Statement disclosed that she had received the $4,150 set forth above on account of a total retainer of $10,000. The Statement further specifically provided that "any additional fees or disbursements shall be paid by the debtor and/or James Carlton and Mary Carlton, individually and personally, *pursuant to an Application for Allowances to be submitted by Susan von Ohlen, Esq. to the Bankruptcy Court, and the same being approved by the Bankruptcy Court."* (Emphasis added). (Statement under Rule 2016(b), paragraph 3).

As noted, on February 18, 1986, this court signed an order that relieved von Ohlen as the attorney for the debtor at the debtor's request. The application was not opposed by von Ohlen. Weiner & Silverman, Esqs. were substituted in her place.

On June 4, 1986 at the request of the debtor, Weiner & Silverman moved before this court to examine into fees von Ohlen had received from the debtor after the filing of the Chapter 11 petition without authority of this court and for an order directing her to repay the same to the debtor. James Carlton permitted his wife Mary to testify at the hearing by reason of her familiarity with such payments. She testified that they were made by checks drawn on the debtor's bank account. Her testimony revealed that because of demands made by von Ohlen, the following payments were made to her after the Chapter 11 petition was filed on November 21, 1984, representing fees for legal services:

$2,925 on January 7, 1985

$2,925 on February 18, 1985

(S.M.P. 6/4/86 at p.p. 49–51)

$300 on July 23, 1985

(S.M.P. 6/4/86 at p.p. 64, 74)

Thus, a total of $6,150 in post-petition payments was paid to von Ohlen by the debtor.

It is to be noted that for the month of January, 1985 during which the first $2,925 payment was made on January 7, 1985, the debtor's operating report filed in this court shows a loss of $1,412.91 and unpaid tax liabilities of $6,138.26. For February, 1985 the report showed a loss of $8,478 during the time the second $2,925 payment was made on February 18, 1985. Finally, for the month of July, 1985 which covered the $300 payment made on July 23, 1985, the report reflected a loss in operations of $8,478.

No notice of a hearing to consider any of the foregoing payments was given nor was any application made to this court for its approval of the same, as required by the Bankruptcy Code as hereinafter discussed.

At the hearing of the motion held on June 4, 1986, von Ohlen admitted receiving all of the foregoing payments without the necessary notice and hearings and without any applications for the same. She acknowledged that the $6,150 in payments must be returned to the debtor but requested two months to do so. Accordingly, this court gave her 60 days to August 4, 1986.[1] The court's oral direction was embodied in its order of June 17, 1986. No appeal was taken from that order.

On August 1, 1986, von Ohlen moved this court for an extension of time to make the August 4th payment, requesting a morato-

---

**1.** *See also* Susan von Ohlen's "Affidavit" dated June 1, 1986, paragraphs 9, 10 and Susan von Ohlen's "Affidavit In Opposition to Debtor's Application For Enforcement of Order" dated September 24, 1986, paragraph 33 wherein Susan von Ohlen admitted that she requested and received legal fees from the debtor without first making an application before the court for a hearing to receive those fees.

rium of six months. This court considered her request at a hearing held on August 13, 1986 when it extended the time of payment to September 24, 1986. An order to that effect was entered by this court on August 21, 1986. At the debtor's request, the order provided that von Ohlen pay interest on the $6,150 at 6% per annum from August 4, 1986, the date on which payment had originally been set by this court. The order further provided for a hearing before it on September 24, 1986 in the event she did not make the payment by then as ordered, to determine whether she should be punished for contempt. No appeal from the order of August 21, 1986 was taken.

At the September 24th hearing, von Ohlen again failed to make the required payment. Instead she submitted an affidavit wherein she sought to justify the value of the services she had rendered in the sum of $4,150 before the Chapter 11 petition was filed, as well as the $6,150 received post-petition. The court treated her affidavit as a request for additional time inasmuch as she failed to address the issue before the court, namely, the repayment of the $6,150 she admittedly received improperly.

Accordingly, and on October 1, 1986, this court entered an order which charitably granted her an extension to October 15, 1986 to make the payment. The order also provided that in the event of a default in payment by that day, a hearing would be held on October 16, 1986 to determine whether this court should issue a certificate to punish her for contempt and whether sanctions should be imposed upon her in favor of the debtor to compensate it for its expenses incurred in seeking the repayment of the unauthorized fees. No appeal was taken from the October 1, 1986 order.

At the hearing held on October 16, 1986 it was established that von Ohlen had failed to make the repayment as directed by the October 1, 1986 order. (S.M.P. 10/16/86 at p. 5). The debtor thereupon

moved for an order denying von Ohlen any further extension of time and for a certificate of contempt to be issued by this court to the District Court. This court granted the motion and signed an order on October 24, 1986 which granted the relief requested. A notice of appeal from that order was filed by von Ohlen.[2] The certificate of contempt was issued by this court on November 14, 1986.

## ISSUE

Should Susan von Ohlen be punished for contempt of this court's order of October 1, 1986 which directed her to repay to the debtor, with interest at 6% per annum from August 4, 1986, the sum of $6,150 representing fees she had demanded and received from the debtor subsequent to the filing of the debtor's petition for relief under Chapter 11, without notice and hearing and without approval and authorization of this court?

## DISCUSSION

(1) *The Bankruptcy Code and Rules Provide a Procedural Framework Governing the Award of Compensation to Professionals*

Susan von Ohlen violated the statutory and procedural requirements governing the award of compensation to her as attorney for a debtor-in-possession in a bankruptcy case.

In order to promote a clear and full understanding of the issue before the court, it is necessary to set forth the routine procedure an attorney must follow in making an application for compensation in a bankruptcy case. The law regarding the procedure is not ambiguous. Bankruptcy Code § 330 explicitly provides that after notice has been given to any parties in interest and after a hearing has been held, the court may award reasonable compensation to the debtor's attorney for the actual

---

**2.** The sole issue on appeal is whether this court abused its discretion in denying Susan von Ohlen any further extensions of time within which to reimburse the debtor's estate. The appeal

does not challenge the court's directive that she shall reimburse the debtor the amount of $6,150 together with interest.

and necessary services which the attorney has rendered. Similarly, Bankruptcy Code § 331, governing awards of interim compensation, provides that compensation may not be allowed to an applicant until there has been an opportunity for notice and a hearing.

■ Prior court approval after notice and hearing is based on sensible and logical reasons. It gives the court an opportunity to monitor the case and control costs involved in the reorganization process, provides the creditors and other parties in interest an opportunity to be apprised of unusual expenditures, particularly those for attorneys and other professionals' fees, and to preserve available funds wherever necessary to fund a plan of reorganization. *In re Yeisley,* 64 B.R. 360 (Bkrtcy.S.D.Tex. 1986) and cases therein cited at p. 362.

The critical procedural requirement set forth by both §§ 330 and 331 is that an award of compensation must be preceded by notice to all parties in interest and by a hearing. Bankruptcy Rule 2002 establishes a comprehensive system of notice requirements related to the administration of a bankruptcy estate. Specifically, Bankruptcy Rule 2002(a)(7) provides that applications for compensation or reimbursement of expenses totalling in excess of $100 must be on not less than 20 days notice by mail to the debtor, the trustee, all creditors and indenture trustees. Bankruptcy Rule 2016 supplements Bankruptcy Rule 2002(a)(7) by prescribing the content of that notice:

A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person

(2) *Absent Compliance With the Code and Bankruptcy Rules, An Attorney Has No Right to Compensation.*

■ An attorney representing a debtor-in-possession is held to the highest standard of conduct and the failure of that attorney to comply with the various procedural requirements concerning applications for compensation may result in the court ordering the debtor's estate to be reimbursed for fees improperly received. The penalties imposed for such misconduct have been harsh. *See, e.g., In re Futuronics,* 655 F.2d 463 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (denied compensation to attorneys for debtor-in-possession due to failure to disclose fee arrangements and certain relatively minor payments); *In re Arlan's Dept. Stores, Inc.,* 615 F.2d 925 (2d Cir.1979) (law firms denied compensation in a Chapter XI case under the former Act because they failed to disclose certain agreements relating to their fees); *In re Devers,* 33 B.R. 793 (D.C. 1983) (debtor's attorney was not entitled to compensation because he failed to file a statement of his fees as required by former Bankruptcy Rule 219(b) (now Bankruptcy Rule 2016).

The case of *In re Lavender,* 48 B.R. 393 (Bkrtcy.E.D.Ark.1984) raised the same issue that is pending before this court. In *Lavender,* as here, the attorney for the debtor received attorney fees from the debtor post-petition without notice or a hearing and without authorization of the Bankruptcy Court as required by §§ 330, 331 and Bankruptcy Rule 2016. In response to this serious breach of a fiduciary duty to the debtor, creditors and the court, the *Lavender* court denied all attorney fees and expenses paid without proper court authorization. Furthermore, the *Lavender* court ordered the attorney for the debtor who had improperly received legal fees to reimburse the debtor's estate in the same amount. Unlike *Lavender,* this court has made no decision at this time as to the value and extent of von Ohlen's services. That issue will be passed upon at a later appropriate date when, as and if the debtor will be ready to confirm a plan of reorganization or in the event it is converted to a Chapter 7, when its estate will be ready to be wound up at the time a trustee in bankruptcy will file a final report and account of the administration of the estate.

### (3) *Susan von Ohlen Was Not Entitled To Interim Compensation*

■ Section 331 of the Code governs the award of interim compensation and provides in relevant part:

[A] debtor's attorney ... may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

Any award of interim compensation is within the discretion of the court and will be considered based upon the circumstances of the particular case. The ability of the debtor to pay the attorney's fee at the particular time the request is made is a major factor the court considers in allowing or disallowing interim compensation. *See, e.g., In re First Hartford Corporation,* 23 B.R. 729 (Bkrtcy.S.D.N.Y.1982) (bankruptcy judge deferred payment of interim compensation pending confirmation of debtor's plan of reorganization); *See also In re Gloria Mfg. Corp.,* 20 B.R. 603 (Bkrtcy.E.D.Va.1982).

■ Where there are insufficient funds or unencumbered assets in the debtor's estate so as not to warrant the payment of interim allowances and where the debtor has not yet proposed a plan of reorganization, the payment of attorney's fees is appropriately deferred to the conclusion of the case. The philosophy dictating this practice is basic. Section 503(b) provides a list of allowable administrative expenses in a bankruptcy case. Included in that list is the compensation and reimbursement awarded to an attorney. Section 507(a) specifies that administrative expenses allowed under § 503(b) are entitled to a first priority in distribution. However, all administrative expenses are to be treated on a parity with respect to payment. *In re Western Farmers Ass'n.,* 13 B.R. 132 (Bkrtcy.W.D.Wa.1981). It therefore violates the letter and spirit of the Bankruptcy Code to pay one administrative expense claim before another. This concern is especially relevant in the present case where there is a possibility that all of the debtor's assets will be exhausted before all of the administrative expense claims are satisfied. In addition, if this Chapter 11 is converted to a Chapter 7 liquidation, the administrative expenses of the liquidation case will have priority over the administrative expenses of the superseded Chapter 11. Section 726(b).

■ Even assuming, strictly *arguendo,* that von Ohlen had made the appropriate application to the court to receive interim compensation in the sum of $6;150, this court would have denied such a request. As has already been demonstrated, the financial picture of the debor is aptly framed in its operating reports. It depicts a debtor

with an ailing business and substantial unpaid liabilities, not only when the payments were made but even at the present time. The debtor's former counsel, von Ohlen, ironically charged with the responsibility of reorganizing and revitalizing the debtor, improperly diverted its funds and hindered its ability to effectuate a successful reorganization.

## CONCLUSION

In light of all of the foregoing, Susan von Ohlen is not entitled to retain fees she received from the debtor after its petition in bankruptcy was filed.

■ This court's order of October 1, 1986 which directed her to repay the debtor $6,150 representing such fees, together with interest at 6% per annum from August 4, 1986, was a fair and reasonable determination. She should be held in contempt for failure to abide by it.

Sanctions which may be involved against her are held in abeyance pending the determination of the decision of the District Court to which has been issued the Certificate of Contempt.

The foregoing constitutes this court's findings of fact and conclusions of law in support of the Certificate of Contempt and the order entered by this court on October 24, 1986 which authorized it to be issued.