In re TRI–STATE PLANT
FOOD INC., Debtor.

No. 00–2778–WRS.

United States Bankruptcy Court,
M.D. Alabama.

Feb. 6, 2002.

Collier H. Espy, Jr., Espy, Metcalf & Poston, P.C., Edward M. Price, Jr., Elizabeth B. Glasgow, Farmer, Price, Hornsby & Weatherford, LLP, James D. Farmer, Farmer, Farmer, Malone & Sherrer, PA, Dothan, AL, for debtor.

## MEMORANDUM AND ORDER

WILLIAM R. SAWYER, Bankruptcy Judge.

This Chapter 11 case came before the Court for hearing on October 11, 2001, upon the Court's order to show cause which was entered on August 31, 2001. Present were the attorneys representing the debtor, C.H. Espy Jr., Edward M. Price Jr., Elizabeth B. Glasgow, James D.

Farmer, and attorney for the bankruptcy administrator, Michael A. Fritz. The question presented here is what should the Court do when professionals bill and receive payment for services without making application to the Bankruptcy Court and without disclosing the receipt of such payments, all in violation of provisions of the Bankruptcy Code and rules promulgated thereunder which regulate the compensation of professional persons. The Court will divide its discussion of the issues into three parts. First, it will review those sections of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure which regulate the retention and compensation of professionals in cases filed under Chapter 11 of the Bankruptcy Code. Second, it will review the actions taken by the professionals involved in this proceeding and discuss the manner in which and the extent to which their actions have violated these rules. Third, it will discuss the question of an appropriate sanction to be imposed.

## I. THE REGULATION OF PROFESSIONALS IN BANKRUPTCY

■ The Bankruptcy Code and rules promulgated thereunder closely regulate the retention and compensation of professional persons by debtors in possession. One should bear in mind the two primary reasons for the regulation of professionals in bankruptcy proceedings. First, debtors in bankruptcy are usually under considerable financial stress. Creditors are threatening suit, foreclosure or repossession and the possible destruction of the debtor's business. The bargaining between a debtor in such a situation and its lawyer and other professionals is frequently one-sided. Second, if the debtor's business is insolvent-meaning that the unsecured creditors will not be paid in full-money paid for professional fees does not come out of the

pocket of the shareholders or equity owners (as that is already exhausted) but rather fees come from an estate which would otherwise be paid to creditors. In other words, the debtor is paying its lawyers with the creditors' money. These two factors working together provide a powerful incentive to professionals to overbill and the debtor to overpay. *Cf. Dickinson Industrial Site, Inc. v. Cowan*, 309 U.S. 382, 388, 60 S.Ct. 595, 599, 84 L.Ed. 819 (1940)(The history of fees in corporate reorganizations contains many sordid chapters). It is against this backdrop that one should consider the provisions in the Bankruptcy Code and the Bankruptcy Rules as they regulate professional fees.

The Court will divide its discussion of the regulation of professional compensation into three parts. First, it will review rules governing the retention of professionals. Second, it will review rules of disclosure. Third, it will review rules on the allowance of compensation.

### A. Retention of Professionals

The Court will begin its review with 11 U.S.C. Section 327, which provides, in part, as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

\* \* \* \* \* \*

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if

in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

 Section 327, as well as other sections regulating the retention and compensation of professionals, apply to trustees in cases under all chapters of the Bankruptcy Code. In cases under Chapter 11, such as the case at bar, the debtor in possession has many of the same rights, powers and duties of a trustee, including the power to retain counsel under Section 327. 11 U.S.C. Section 1107(a). References to the trustee in these sections apply to a debtor in possession as well.[1] Turning to the substance of Sections 327(a) and (e), one will observe that there are two overriding themes. First, retention of a professional must be approved by the Court. The trustee, or a debtor-in-possession in a case under Chapter 11, may not hire professionals without the Court's approval. Second, the professional person to be hired must be "disinterested" as that term is defined in the Code.

Section 327 is supplemented by Bankruptcy Rule 2014(a), which provides as follows:

(a) APPLICATION FOR AN ORDER OF EMPLOYMENT. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to Sections 327, 1103, or 1114 of the Code shall be made only on application of the trustee or committee. The appli-

cation shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional service to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountant, the United States trustee, or any person employed in the office of the United States trustee.[2] The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountant, the United States trustee, or any person employed in the office of the United States trustee.

 This rule requires that an application for employment of a professional be made in writing. The rule further sets out in detail the formal requisites for the application. Of particular interest here, the application shall state "any proposed arrangement for compensation." Thus, the terms and conditions of the proposed employment must be made known to the Court at the time application for employment is made. In addition, the professional who is to be retained must submit a

---

1. Many code sections, such as Section 327, which refer to the Trustee apply equally to the debtor in possession. In cases under Chapter 11, the debtor is a debtor in possession, unless the Bankruptcy Court appoints a trustee. 11 U.S.C. Sections 1107, 1101(1). As a trustee has not been appointed in this case, Tri-State is a debtor in possession. For purposes

of this decision, the terms debtor, debtor in possession and trustee are synonymous.

2. The Bankruptcy Rules make reference to the United States Trustee. As this District has a Bankruptcy Administrator, references in the Rules to the United States Trustee are understood to refer to the Bankruptcy Administrator. Rule 9035, Fed. R. Bankr.P.

verified statement setting out all connections with the debtor and other parties in interest.

### B. Disclosure Rules

In addition to the disclosures which must be made in the application for employment and the verified statement of the professional to be employed, Section 329 of the Code imposes additional requirements. Section 329 provides as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive . . .

The requirements of Section 329 are supplemented by Bankruptcy Rule 2016(b), which provides as follows:

DISCLOSURE OF COMPENSATION PAID OR PROMISED TO ATTORNEY FOR DEBTOR. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by Section 329 of the Code including wheth-

er the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

 Section 329 and Bankruptcy Rule 2016(b) should be read together. Within 15 days of the date a bankruptcy case is filed, the debtor's attorneys must disclose how much has been paid or promised to be paid. Subsequent payments must be disclosed within 15 days of payment. To put the matter plainly, when a debtor pays his lawyer, or other professionals, it should not be done in secret.[3]

### C. Compensation of professionals

The amount of compensation paid to professionals and the means by which compensation is paid, is regulated by 11 U.S.C. Section 330(a), which provides as follows:

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

---

**3.** Debtors in cases under Chapter 11 in this district are required to file periodic reports as to their financial condition. The disclosure requirements under Section 329 and Rule 2016(b) are not met by making a vague reference to professional fees in a financial statement. *See, In re TJN, Inc.*, 194 B.R. 400, 403 (Bankr.D.S.C.1996).

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparable skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (b), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

\*　　\*　　\*　　\*　　\*　　\*

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

 Two themes run through this section. First, compensation may not be paid unless it is reasonable. To make this determination, the Court looks to facts such as the amount of time spent on each task and the hourly rate applied. Both must be reasonable. That is, excessive amounts of time are not compensable, nor should excessive hourly rates be paid. Second, the services to be compensated must be necessary to the administration of the case. Professionals will not be paid for services which are not necessary to the administration of the estate. This determination is made in light of the facts known at the time the services were performed and not on an after-the-fact basis using the benefit of hindsight. In addition, no compensation is to be paid where there is an unnecessary duplication of services.

The procedure for making application for compensation is set forth in Rule 2016(a), which provides, in part, as follows:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expenses and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to

what payments have theretofore been made or promised to the applicant for serviced rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor ... the applicant shall transmit to the United States trustee a copy of the application.

 If the application for compensation seeks more than $1,000, the Court will set the application for hearing. All parties in interest are to be given not less than 20 days notice of the hearing at which the application is heard. Rule 2002(a)(6). The notice of hearing must identify the applicant and the amount requested. Rule 2002(c)(2). An application for professional compensation is subject to review by three different groups. First, all parties in interest are entitled to receive notice of hearing on an application for compensation and an opportunity to make objections. This is eminently fair because, in an insolvency situation, every dollar paid to a professional is one less dollar which is available for distribution to creditors. Second, the Bankruptcy Administrator is under a duty to review the applications and give the Court advice. Third, the Court has an independent duty to review applications, even in the absence of objections by creditors or the Bankruptcy Administrator.

 A professional who seeks compensation has two options as to the timing for making his application. First, he may simply wait until the case is ready to close and make a single, final application for all services performed in the case. Second, he may file one or more interim applications for compensation. 11 U.S.C. Section 331. Interim applications may be made not more than once every 120 days, unless the Court permits applications to be filed more often. *Id.* The last sentence of Section 331 is particularly relevant here. "After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement." *Id.* The meaning of this section is plain. The payment of interim compensation may not be made unless first an application is made, notice given to creditors [unless less than $1,000 is sought], hearing is held and finally allowance by the Court.

## II. ACTIONS TAKEN BY PROFESSIONALS IN THIS CASE

Having reviewed the scheme set forth in the Bankruptcy Code and Rules for the regulation of professionals, the Court will next review the actions taken by professionals in this case and explain how they have failed to comply with these rules. As the show cause proceeding was directed to three separate law firms, the Court will review the actions of each separately.

### A. COLLIER H. ESPY, JR.

The debtor in possession retained Collier H. Espy, Jr. as lead bankruptcy counsel. Espy was paid a retainer in the amount of $25,000, which was properly disclosed at the time that the debtor in possession made application to retain him. While reviewing financial statements and other documents in connection with an adversary proceeding in this case, the Court noted indications that professional fees were being paid without authorization by the Court. On July 20, 2001, the Court entered an order which required the Debtor to provide the Court information as to the payment of legal and professional fees

paid. (Doc. 152). For each such payment, the Debtor was ordered to provide the date, amount and name of the payee.

On August 20, 2001, in an apparent effort to comply with the Court's order, Espy filed an application for interim compensation for himself as well as Price and Glasgow and Farmer. (Doc. 155). This was the first concrete evidence the Court had that there was a problem in this case. While Espy and his co-counsel were free to file an interim application for compensation, they erred when they failed to comply with the Court's order to the debtor to provide information as to the payment of professional fees. At Paragraph 9 of the interim application, Espy disclosed that payments totaling $7,402.17 had been made to him after the date of the petition in bankruptcy. This amount is in addition to the $25,000 previously disclosed. Espy had not made application for or disclosure of this payment prior to the filing of the application for interim compensation. In addition, Espy failed to make application to draw the $25,000 retainer which was paid at the time the petition in bankruptcy was filed.

On August 31, 2001, the Court entered an order entitled "Order to C.H. Espy, Jr., Edward M. Price, Jr., Elizabeth B. Glasgow and James D. Farmer to Show Cause Why Fees Paid Should Not Be Disgorged and Sanctions Imposed for Violations of the Bankruptcy Code, Bankruptcy Rules and the Order of this Court." (Doc. 157). In response to this order, Espy filed a report which set forth the dates and amounts of all such payments. (Doc. 158). In addition, Espy returned the sum of $7,402.17 to the debtor in possession, notwithstanding the fact that the Court did not specifically order that this be done. Espy contends that he has put the estate back in the position it would have been had transfers in question not been made, however he contends that his conduct did not violate the Bankruptcy Code or the Rules promulgated thereunder. While the Court accepts Espy's good faith gesture to place the estate back in the position it would have been but for the improper payments, this issue is sufficiently important that a complete discussion as to why his argument is incorrect should be made.

▪ It is well established that a professional in a case under Chapter 11 may not be paid absent Bankruptcy Court approval of a proper application, upon notice to creditors. *Law Office of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1044–46 (9th Cir.1997); *Neben & Starrett, Inc. v. Chartwell Financial Corporation (In re Park–Helena Corp.)*, 63 F.3d 877, 880–81 (9th Cir.1995)(Failure to disclose receipt of prepetition retainer cause for denial of all compensation and disgorgement of all amounts paid); *Lavender v. Wood Law Firm (In re Lavender)*, 785 F.2d 247 (8th Cir.1986); *Vergos v. Mendes & Gonzales, PLLC (In re McCrary & Dunlap Construction)*, 263 B.R. 574, 581–88 (M.D.Tenn.2001)(held that Bankruptcy Court erred in failing to order total disgorgement of fees for willful failure to obtain Bankruptcy Court approval for payment of fees); *Miller v. United States Trustee (In re Independent Engineering, Co., Inc.)*, 232 B.R. 529 (1st Cir. BAP 1999); *In re Federal Roofing Co., Inc.*, 205 B.R. 638, 643–44 (Bankr.N.D.Ala. 1996); *In re Rivers*, 167 B.R. 288, 304 (Bankr.N.D.Ga.1994)(It is elementary that a professional may not solicit or accept compensation from a fiduciary without prior court approval and that compensation may be awarded only after notice to parties in interest and a hearing); *In re Nana Daly's Pub. Ltd.*, 67 B.R. 782, 785–87 (Bankr.E.D.N.Y.1986); *In re Schaak Electronics, Inc.*, 63 B.R. 830 (Bankr.D.Minn. 1986); *see also, In re Arlan's Dept. Stores,*

615 F.2d 925, 936–38 (2nd Cir.1979)(Attorney's fees in Chapter XI case may not be paid absent the approval of the Bankruptcy Court, interpreting the Bankruptcy Act of 1898). Additional support may be found in cases under Chapter 7 of the Bankruptcy Court. *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720–21 (6th Cir.2001)(Failure to disclose receipt of fees violates Section 329 and is cause for disallowance and disgorgement of all fees in case under Chapter 7); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478–480 (6th Cir.1996)(Bankruptcy Court abused its discretion when only 50% of fees disgorged where counsel failed to properly disclose the receipt of attorney's fees, 100% disgorgement of fees ordered). This Court has not found a published decision from any court which holds that a lawyer for a debtor in possession in a case under Chapter 11 may accept payments without authorization by the Court.

Espy claims to the contrary, that the rules do not require prior approval of payments for professional fees, citing *In re Knudsen Corp.*, 84 B.R. 668 (9th Cir. BAP 1988). Espy draws the distinction between an "award" of fees, as provided by Section 330(a), and payment of fees. Espy contends that fees may be paid in advance of an award and that there is no violation of either the Code or the Rules so long as the fees are ultimately awarded. In *Knudsen* the Bankruptcy Court approved a procedure whereby counsel would bill monthly for services. The United States Trustee objected, contending that the Bankruptcy Court had exceeded its statutory authority. The facts in *Knudsen* differ considerably from the facts here. First, in *Knudsen* the Court approved the

billing procedure in advance. Espy did not seek such approval here. Moreover, the procedure utilized in *Knudsen* contained additional safeguards which were not present here. The monthly bills were sent to the debtor, counsel for a large secured lender, counsel for the creditors' committee, the Securities and Exchange Commission and the United States Trustee. Quarterly applications for interim fees were to be made. This is in stark contrast to the facts of this case. No one except Espy and the debtor saw the bills, or even knew that payments were being made. When application was made to approve Espy's employment, no mention of this monthly billing procedure was made. (Docs. 16, 17). This Court's order approving Espy's employment made no mention of such a procedure. (Doc. 45). Indeed, the order approving employment provided that "the Court, while approving the employment of the aforementioned attorney, does hereby reserve ruling on approval of the hourly rate as submitted." (Doc. 45). This indicates that the Court contemplated that it would review Espy's application prior to payment. In addition, one of this Court's "first day" orders contains the following provision: "The debtor is directed to give notice required by the Federal Rules of Bankruptcy Procedure of . . . (d) a hearing on an application for compensation or reimbursement of expenses in excess of $500.00." Order dated May 30, 2000, (Doc. 7).[4] The same order further states that "failure to comply with this order may result in dismissal or conversion of this case to a case under Chapter 7 or other appropriate action by the court." (Doc. 7).

This Court is aware that there is a difference of opinion among some of the Bankruptcy Courts as to whether certain

---

**4.** Bankruptcy Rule 2002(a)(6), which requires that notice of hearing on professional compensation be sent to creditors, increased the

threshold to $1,000 from $500, effective December 1, 2000.

procedures for monthly conditional interim payments are proper. In Delaware, the Bankruptcy Courts have on occasion approved a procedure for monthly billing, followed by a formal quarterly fee application. *In re Mariner Post–Acute Network, Inc.*, 257 B.R. 723 (Bankr.Del.2000). A Bankruptcy Court in Oklahoma took issue with some aspects of the procedures to be followed regarding monthly transfers to professionals. *In re Commercial Financial Services, Inc.*, 231 B.R. 351 (Bankr. N.D.Okla.1999). In these cases, professionals sought authority to receive monthly payments in advance. In the case at bar, the professionals in question did not disclose that it was their intention to bill and receive payments on a monthly basis. Moreover, no disclosure was made to the Court, the Bankruptcy Administrator or any party in interest, other than the debtor, that professional fees were in fact being billed and paid. The cases cited immediately above turn on fine questions of what type of procedures should be imposed upon professionals who wish to be paid more often than every 120 days. In the case at bar, there were no procedures at all because this Court was not aware that professional fees were being paid. Therefore, *Knudsen* and the other cases cited immediately above on this point are inapposite here.

Espy offered an additional defense during the show cause hearing which should be disposed of here. Espy claims that the custom in this Court has, for many years, been that applications for payment of fees were made only at the close of the case. It is claimed that debtors' counsel would bill the debtor directly and receive payment while the case was pending. It apparently was understood that any amounts paid to counsel will be repaid to the estate if not awarded by the Court. However, a published decision from this Court entered in 1991 suggests that his understanding of local custom is not shared by the Court. *See, In re Old South Transportation Co., Inc.*, 134 B.R. 660 (Bankr.M.D.Ala.1991)(Gordon, J.). In *Old South Transportation,* counsel for a debtor in a Chapter 11 case made application for fees in the approximate amount of $37,000. Judge Gordon carefully analyzed the application and concluded that only $13,000 should be allowed. He further noted that $5,000 had been paid previously, leaving the lawyer an administrative period claim for the remainder, which was approximately $8,000. Had counsel in *Old South Transportation* used the procedure suggested by counsel in this case, there would have been no need for the allowance of an administrative period claim, rather it would have been necessary for counsel to return the excessive amounts paid. In addition, in *Old South* the Court was aware that amounts had previously been paid. In the case at bar, the Court did not know who was paid, or how much until two specific orders had been entered directing that this information be provided.

 Counsel's understanding of local custom is misplaced, not only because this Court does not share his understanding, but for more fundamental reasons as well. First, no matter how long standing, local custom and practice may not override either an act of Congress or the Bankruptcy Rules which have been prescribed by the Supreme Court and are designed to have national application. The role of local custom and practice is to bridge the gap between the Bankruptcy Code and the Rules and the practice of law on a day to day basis.

 Second, the fact that there is nothing in the Court's record to indicate that professionals were billing and being paid hundreds or thousands of dollars is deeply troubling. These paid but not ap-

proved fees are an asset of the estate whose existence is known only to the debtor and the professional in question. The existence of these undisclosed assets violate fundamental principals of the Bankruptcy Code which call for full disclosure of all assets and all significant transactions. *See,* 11 U.S.C. Section 521(1)(requiring the debtor to file a schedule of assets and a statement of financial affairs); Sections 704(7), 1106(a)(1), 1107(a)(provide information concerning the estate and its administration); Section 329(a)(requires attorneys to file statement of compensation paid).

■ Third, the Bankruptcy Administrator, whose duty it is to review applications for professional fees was likewise unaware of this local custom. The fact that the Bankruptcy Administrator as well as the Court was not aware of this local custom would have caused the Court to reject this claim out of hand, but for additional information which has come to the attention of the Court since the time of the October 11, 2001, hearing. The undersigned has made inquiries in other cases and discovered that other professionals have billed and been paid for services without making application to the Court, in a manner similar to that which was done here. The Court is concerned that this practice may be widespread in this district. Therefore, it is necessary for this Court to take action not only to correct the errors and omissions which have occurred in this case, but to correct what may be a widespread misunderstanding of these rules throughout the district.

The Court will consider, on a case by case basis, an appropriate sanction for each professional who has violated these rules not only in this case but in all Chapter 11 cases pending in this district. In general terms, the procedure will be as follows: first, all amounts improperly paid will be paid over to the Clerk of this Court; second, full disclosure will be made promptly by all professionals; third, professionals who have received improper payments may make application for payment of fees and expenses, as provided by the Rules; fourth, the Court will consider, on a case by case basis an appropriate sanction to be imposed. Any professional making application may make the Court aware of any facts that he or she believes should be considered in mitigation of the imposition of a sanction. The Court's purpose in entering this order is threefold. First, it seeks to undo, as much as possible, the harm to the various estates caused by violations of these rules. Second, to the extent that disclosures have been erroneous or incomplete, complete and correct disclosure of the payment of professional fees must be made. Third, sanctions will be considered on a case by case basis for the purpose of punishing those professionals who have violated the rules and to deter such conduct in the future.

■ The Court will summarize the errors in the actions taken here by Espy in connection with his retention and compensation in this case. First, at the time application to approve his employment was made, Espy failed to disclose the nature of the "proposed arrangement for compensation," in violation of Rule 2014(a). Second, Espy billed the debtor for professional services without making an application to the Bankruptcy Court, in violation of 11 U.S.C. Section 330 and Bankruptcy Rule 2016(a). In addition, creditors were not given notice as required by Bankruptcy Rule 2002(a)(6). Third, Espy failed to disclose the receipt of payments for professional fees. 11 U.S.C. Section 329; Bankruptcy Rule 2016(b).[5] The Court will discuss in

5. In the view of the undersigned, counsel need not make an amended Rule 2016(b) dis-

Part III below the sanction for these errors.

### B. EDWARD M PRICE, JR. AND ELIZABETH B. GLASGOW

Price and Glasgow are partners in a law firm which was retained for the purpose of representing the Debtor in two class-action suits which had been filed shortly before the petition in bankruptcy was filed. The potential liability from that litigation was the cause of this bankruptcy filing. The Debtor applied to the Court to retain Price and Glasgow at the outset of this case. (Doc 20). In the application to employ Price and Glasgow, no mention was made that they proposed to bill and be paid monthly for their services.

One distinction that can be made between the application to employ Price and Glasgow on the one hand and Espy on the other, is that Price and Glasgow were retained pursuant to Section 327(e), while Espy was retained pursuant to Section 327(a). The difference is that professionals retained pursuant to Section 327(e) are limited to employment for a "specified special purpose, other than to represent the trustee in conducting the case." The primary distinction between employment under these two provisions is that the standard for "disinterestedness" is different. Professionals retained pursuant to Section 327(a) may not "hold or represent an interest adverse to the estate," while professionals employed pursuant to Section 327(e) may "not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is employed." Thus, the scope of the determination of whether a professional is disinterested is much broader under Section 327(a) than under Section 327(e). Whether a professional is retained pursuant to Section 327(a) or 327(e) has no impact on the requirements relating to compensation and disclosure.

Pursuant to this Court's August 31, 2001 order, Price and Glasgow filed a response which indicated that they had received 16 payments totaling $85,146.21. (Doc. 163). No applications for compensation were made in advance of these payments and no disclosure of the receipt of these payments were made prior to Price and Glasgow's September 7, 2001, filing. Price and Glasgow have not returned the improperly made payments.

Price and Glasgow defend their position claiming that they are not bankruptcy law specialists, that they were retained to represent the debtor in a civil action which was existing at the time the bankruptcy case was filed and that they relied upon Espy for guidance as to bankruptcy matters. All professionals who seek employment and payment of compensation in Chapter 11 cases are responsible for making their own determination as to the requirements imposed by law. This Court is unwilling to absolve any professional from compliance with the law. At most, reliance upon a bankruptcy specialist may be a factor which the Court may consider in the totality of all of the attendant facts and circumstances, in the mitigation of a sanction imposed for a violation of the rules. However, the rules apply to all professionals equally. This Court expects that all professionals who are retained under its authority will comply with all pertinent provisions of the Bankruptcy Code and all

closure if the particulars of the payment are disclosed in connection with the application for compensation. It is not ordinarily necessary to disclose the receipt of compensation which has been authorized by the Court.

There may be exceptions to this general rule. For example, in some circumstances the Court may allow a claim for compensation but withhold payment.

applicable Bankruptcy Rules. Each professional has an independent and nondelegable duty to ascertain for himself or herself, the pertinent requirements of the rules governing his or her employment as a professional. Any professional who violates these rules are subject to sanctions. Price and Glasgow committed the same violations of the rules that were committed by Espy. However, Espy served notice that he has repaid the amounts received from the Debtor, while Price and Glasgow have not. The Court will discuss the sanctions to be imposed in Part III below.

### C. JAMES D. FARMER

■ The Debtor made application to employ James D. Farmer on June 30, 2000. (Doc. 39). Farmer represented the debtor in various legal matters and sought to remain as its corporate counsel. Farmer has admitted receiving fees in the amount of $21,360.52 subsequent to the date of the petition. No application for payment of or disclosure of the receipt of these fees were made except for Farmer's September 7, 2001, response to this Court's order of August 31, 2001. (Doc. 162). Farmer committed violations of the rules similar to those committed by Espy, Price and Glasgow. Farmer has served notice that he has returned postpetition fees to the debtor in possession. The Court will discuss the remedy to be applied in Part III below.

### D. OTHER PROFESSIONALS

In addition to the professionals discussed above, the debtor has provided information that other professionals have been paid, also without going through the application, notice and award provisions. (Doc. 164). Those professionals are:

1. McDaniel & Associates, P.C., paid $27,867.14.

2. Constangy, Brooks and Smith, LLC, paid $5,344.00.

3. Morris, Manning and Martin, LLP, paid $19,597.59.

4. Regulatory Compliance Services, Inc., paid $33,982.93.

5. Balch & Bingham, paid $16,057.97.

The Court will discuss an appropriate sanction in Part III below.

### III. THE REMEDY

■ In this case, eight different professional associations have received over $200,000 in fees without having applied for or received the Bankruptcy Court's approval. Moreover, none of these payments was disclosed as required by law. The Court has learned that hundreds of thousands of dollars have been paid to other professions in other cases pending in this Court, also without Bankruptcy Court approval or disclosure of the payments. There has been a complete failure of the statutory scheme which is designed to regulate the compensation of professionals. In cases under Chapter 11, the debtor in possession acts as his own trustee. The Court necessarily relies upon the various professionals retained by the debtor to make sure that the law is observed. Where, as here, the professionals do not faithfully observe the law, the regulatory scheme is undermined. As only three of the eight firms which have received improper payments have been put on notice, sanctions will not be imposed at this time. Amounts improperly paid shall be promptly paid over to the Court. Monetary sanctions will be considered in conjunction with applications for payment of professional fees. Any professional who fails to comply with this Court's order to return fees improperly paid or truthfully account for amounts paid will be subject to discipline.

Espy and Farmer returned the improperly paid professional fees to the debtor.

While such a procedure may well be acceptable in the usual case, this procedure is not acceptable here. The rules regulating payment of compensation and disclosure of payments have been completely disregarded here. The Court is so lacking in confidence that the debtor is properly advised regarding these procedures that all future disbursements of professional fees in this case will be made by the Court. To the extent that improperly made payments have been returned to the debtor, these amounts shall be paid to the Clerk of this Court for such disposition as the Court will determine.

### OTHER RELATED MATTERS

■ On August 20, 2001, Espy, Price, Glasgow and Farmer filed an application for approval of interim compensation. (Doc. 155). The Court will, by separate order, schedule the applications of Espy and Farmer for hearing. However, in reviewing the application of Price and Glasgow the Court notes that numerous entries describing the nature of the services provided were redacted. Apparently, Glasgow and Price had determined that this information should not be provided because of its sensitive nature.[6] It is impossible to determine whether a billing entry is reasonable and necessary if the description is redacted. Professionals may not properly avoid scrutiny of their fee applications by redacting the description of the billing entry. As the August 20, 2001 application of Price and Glasgow is insufficient on its face, the Court will not proceed with a hearing on this flawed interim fee application but rather it will deny the application as it is insufficient on its face.

■ On November 28, 2001, Espy filed a Motion for Additional Retainer, seeking an additional retainer in the amount of $12,500 for himself and $10,000 for Rod Andrews, CPA. (Doc. 175). Given the history of this case, the Court will not permit any professional to hold a retainer for professional fees and expenses. All disbursements for professional fees in this case will be made by the Court. None of the professionals employed in this case have complied with rules on the disclosure of fees. In an effort to ensure compliance with these rules, professional fee retainers will not be permitted in this case.

IT IS ORDERED:

1. That Collier H. Espy, Jr.[7]; Edward M. Price, Jr.; Elizabeth B. Glasgow; James D. Farmer; McDaniel & Associates, P.C.; Costangy, Brooks, and Smith, P.C.; Morris, Manning and Martin; Regulatory Compliance Services, Inc.; and Balch & Bingham; shall, within 30 days of the date of this order, (1) pay into the registry of the Court all amounts received at any time on or after May 30, 2000, by them for professional fees or expenses from the debtor or from or on behalf of the estate in this case, and (2) file a complete accounting of all amounts received for professional fees or expenses at any time on or after May 30, 2000, explaining any discrepancy between the amount paid to the Clerk and the amounts indicated above.

2. The Court will, by separate order, schedule hearings on the applications which have been filed, to-wit: Collier H.

---

6. On December 21, 2001, Price and Glasgow filed a second interim application for compensation. (Doc. 178). They served copies of their application upon all creditors, deleting Exhibit A, which is the detailed billing information, as it was deemed by them sensitive and privileged.

7. To the extent that Espy and Farmer have paid amounts over to the Debtor, any such amounts shall be paid over by the Debtor to the Clerk. The Court will control all disbursements for professional fees until further notice.

Espy, Jr. (Doc. 155); James D. Farmer (Doc. 155); McDaniel & Associates, P.C. (Doc. 168); Morris, Manning & Martin, LLP (Doc. 170); Price & Glasgow (Doc. 178)(Application filed December 21, 2001).[8]

3. For the reasons set forth above, the Court DENIES, without prejudice, the Application for Professional Fees of Edward M. Price, Jr., and Elizabeth B. Glasgow. (Doc. 155)(Application filed August 20, 2001). Price and Glasgow may submit a final application at the close of the case, or the termination of their employment, or they may submit a properly-documented interim application for professional fees and expenses not less than 120 days from the date of this order.

4. For the reasons set forth above, the Motion for Additional Retainer (Doc. 175)(Filed November 28, 2001, seeking an additional retainer for Espy and a retainer for Rod Andrews) is DENIED.

5. The Bankruptcy Administrator shall, within 10 days of the date of this order, send a copy of this Order and Memorandum to all professionals who have been retained in any case which is currently pending in this Court under Chapter 11 of the Bankruptcy Code, and promptly file a Certificate of Service to that effect.

6. Every professional in every Chapter 11 case now pending (as defined below)[9] shall file a report with the Court, with a copy served upon the Bankruptcy Administrator, in each Chapter 11 case in which they serve, within 45 days of the date of this order, with the following information: (1) the date and amount of each payment received for professional services; (2) a statement as to whether or not each such payment was approved by an order of this Court; (3) if the answer to the question posed in sub-paragraph (2) above is yes, state the date of the order approving the fees; (4) if the answer to the question posed in sub-paragraph (2) is no, all amounts received shall be paid to the Clerk of the Bankruptcy Court not later than 45 days from the date of this order.

7. The Bankruptcy Administrator shall examine the reports filed pursuant to Paragraph 6 above, and submit to the Court a report which states the name and address of each professional who has failed to comply with this order.

8. Any professional who has received payment of professional fees without proper Court authorization may make application for payment of interim or final professional fees and expenses. The Court will consider the imposition of sanctions on a case by case basis. Any application filed pursuant to this paragraph must include any grounds that the professional wishes considered by the Court in arriving at a proper sanction.

---

8. These applications will not be considered until full compliance with the requirements of Paragraph 1 of this Order have been made.

9. The requirements of this paragraph do not apply to professionals in the Tri–State case as paragraphs 1–3 apply to them. Chapter 11 cases in which a plan has been confirmed or cases which were dismissed or converted to another chapter, prior to the date of this order, are not within the scope of this order.