### In re Sebastian PALLADINO and Marcella Palladino, Debtors.

### No. 01 B 00972.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 4, 2001.

Susan G. Castagnoli, Law Office of Susan G. Castagnoli & Associates, Naperville, IL, for Movant.

Sebastian Palladino and Marcella Palladino, pro se.

Glenn B. Stearns, Lisle, IL, Chapter 13 Standing Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the revised application of Susan G. Castagnoli ("the Attorney") for fees in the sum of $6,854.00 and reimbursement of expenses totaling $215.25, and the objections thereto filed by one of the Debtors, Sebastian Palladino ("the Debtor"), and Glenn B. Stearns, the Standing Chapter 13 Trustee (the "Trustee"). For the reasons set forth herein, pursuant to 11 U.S.C. § 330, the Court awards the Attorney compensation in the sum of $2,925.50 and authorizes reimbursement of expenses in the amount of $185.00. The Court sustains, in part, the objections of the Debtor and the Trustee.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A)and (O).

## II. FACTS AND BACKGROUND

The Debtors have experienced recurrent financial problems which have led them to file a series of bankruptcy petitions over the past five years: a Chapter 7 petition filed in 1996; a Chapter 13 petition filed in 1999 in which the confirmed plan proposed to pay 100% to all creditors, but subsequently failed; and the instant Chapter 13

petition in which the Debtors proposed a plan that allowed secured, administrative, and unsecured priority claims are to be paid 100% and unsecured nonpriority claims are expected to be paid a 45% dividend. The Attorney represented the Debtors in all three cases. However, she was discharged by the Debtors in this case on June 1, 2001 after they received notice of her requested fees. One of the Debtors and the Trustee object to those fees on various grounds.

The Attorney and the Debtors entered into a written fee agreement dated January 8, 2001. Page one thereof quoted a flat fee of $1,695.00, costs of $185.00, less the retainer paid by the Debtors of $756.00, with a balance of $1,124.00 to be "Paid Through Your Plan After Filing." The flat fee covered only those services outlined on the second page of the agreement as:

1. Analysis of the client's financial situation and advice to the client in determining whether to file a petition under the Bankruptcy Code.

2. Preparation and filing of the Petition, Statement of Affairs, schedules of assets and liabilities and Plan preparation.

3. Representation of the client at the initial Meeting of Creditors and the Confirmation Hearing.

Page three of the fee agreement listed thirteen categories of additional services for which extra fees would accrue upon performance, most being charged at $225.00 per hour. Such services included: negotiations with creditors; appearance at more than one creditors' meeting; and defending objections to confirmation or motions to lift the automatic stay.

The Attorney has filed several iterations of the contested fee application at bar. The Court will only review the final revised application in which the Attorney

provides a summary of the itemized services she, her paralegal and two other attorneys, who are neither her partners nor associate members of her firm, provided in this case. The Attorney's revised summary shows a total of 32.8 hours expended between January 3, 2001 and June 18, 2001. The Attorney seeks fees aggregating $6,854.00, plus reimbursement of expenses totaling $215.25 for the case filing fee ($185.00) and postage ($30.25) for unspecified mailings.

The Debtor is so dissatisfied with the Attorney's work that he contends that she should only be awarded a total fee of $843.00, or $87.00 more than the $756.00 retainer paid by the Debtors. He argues that many of the services charged on an hourly rate should have been covered by the basic services flat fee portion of the fee agreement quoted at $1,695.00. Further, he states that other services rendered by the Attorney were neither authorized by him nor considered to be necessary. Moreover, he asserts that the Attorney's work product was "riddled with incorrect numbers, incorrect language, shoddy workmanship, scribbling, scratch outs, [and] illegible writing...." He further maintains that this caused him to fire her and file a complaint with the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois. *See* Attorney's Trial Exhibit A.

The Trustee objects to the Attorney's fees on several grounds: (1) a large portion of the time and services expended were not beneficial to the estate as required by 11 U.S.C. § 330; (2) some of the services were rendered prior to the Debtors and the Attorney entering into the fee agreement; (3) other services were charged after the Debtors fired the Attorney; (4) some services were "lumped" and vaguely described; (5) the fee agreement did not expressly identify or provide for use of other counsel to assist the Attorney with the Debtors' case; (6) some of the services were excessive and involved unnecessary errors that were made in filling in mortgage arrearage amounts in various iterations of the plan; and (7) some of the services charged at an hourly or lodestar rate should have been covered in the basic flat fee portion of the fee agreement. At the conclusion of the trial, the Trustee recommended that the Court award the Attorney the reduced sum of $2,250.00.

The Attorney was the only witness to testify. She stated that because this was the third case for the Debtors, she was compelled to expend additional time and effort to determine whether or not to file the petition. She was required to determine whether there was a material change of circumstances warranting the filing of the case after the failure of the prior Chapter 13 plan. She concluded that the Debtors' debt levels were too high for them to be able to refinance the mortgage on their home. According to the Attorney, all of the services summarized in her revised application were reasonable and necessary and should be allowed. She admitted, however, that some of the fees sought were prior to the effective date of her retention by the Debtors, and others were rendered after they discharged her. She was unable to "delump" some of the "lumped" entries wherein two or more discrete tasks were combined into one billing entry without specifying the amount of time expended on each separate task. She further admitted that the fee agreement did not specifically provide for the employment of other attorneys outside her firm for which she charged her hourly billing rate. She was uncertain of how much she had paid them for their services. She further conceded that some of the various iterations of the plan contained internal inconsistencies and errors which necessitated further corrections and revisions and resulted in approximately 9.3 hours of time

expended for these services. She was unable to explain why it took her paralegal 2.6 hours of time to correspond, prepare and serve responses to objections to confirmation, and prepare and mail her motion to withdraw in light of the fee agreement's reference to use of paralegal time solely for negotiations with creditors.

## III. *DISCUSSION*

### A. *Award of Attorney's Fees*

■ Pursuant to 11 U.S.C. § 330 professionals applying for fees payable out of the bankruptcy estate must demonstrate that their services were actual, necessary and reasonable. Specifically, § 330(a)(4)(B) provides in relevant part:

In a ... chapter 13 case in which the debtor is an individual, *the court may allow reasonable compensation to the debtor's attorney* for representing the interests of the debtor in connection with the bankruptcy case *based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.*

11 U.S.C. § 330(a)(4)(B) (emphasis supplied). Those other factors referred to are set forth as follows:

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexi-

ty, importance and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

4(A) Except as provided in subparagraph (b), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(3) and (4)(A).

■ The Court has a duty to examine independently the reasonableness of the fees requested. *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hosp. Ass'n*, 89 B.R. 719, 734–35 (Bankr.N.D.Ill.1988). The burden of proof to show entitlement to the fees requested is on the Attorney. *See In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir.1994); *In re Stoecker*, 114 B.R. 965, 969 (Bankr.N.D.Ill.1990); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D.Ill.1987); *Cohn v. United States Trustee (In re Ostas)*, 158 B.R. 312, 323 (N.D.N.Y.1993). This burden must "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." *Pettibone*, 74 B.R. at 299 (citations omitted). The fee application must stand or fall on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr. N.D.Ill.1987).

■ The Court has utilized the factors cited in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors are as follows:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.[1]

■■■ The Court may determine what is the reasonable amount of time a professional should have to spend on a given project. *Wildman,* 72 B.R. at 713 (citing *In re Shades of Beauty, Inc.,* 56 B.R. 946, 951 (Bankr.E.D.N.Y.1986), *aff'd in part, remanded in part,* 95 B.R. 17 (E.D.N.Y. 1988)). The Supreme Court, in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), ruled that "excessive, redundant or otherwise unnecessary" hours should be excluded from the fees sought. In other words, applicants should exercise good faith "billing judgment." *Id.* at 434, 103 S.Ct. 1933; *see also In re Temple Retirement Community, Inc.,* 97 B.R. 333, 339 (Bankr.W.D.Tex.1989); *In re Pothoven,* 84 B.R. 579, 584 (Bankr. S.D.Iowa 1988).

■■■ Reasonable time spent does not necessarily include all time actually expended. *See In re Chas. A. Stevens & Co.,* 105 B.R. 866, 870–71 (Bankr.N.D.Ill.1989). Hence, the exercise of good faith billing judgment comes into play. Compensation will not be awarded for nonproductive time, or for time spent on services that are duplicative of previously rendered services.

In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits—measured by standards of reasonableness—to what a professional can demand in a bankruptcy case." *Leventhal,* 19 F.3d at 1178.

■■■ The Seventh Circuit has stated that the appropriate measure for determining reasonable attorneys' rates charged is the market approach. *See In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir.1992) ("The object in awarding a reasonable attorney's fee ... is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible."). The Court also views the attorney/client relationship as one in which the terms of the engagement should normally be upheld, including the fee arrangement, so as not to unduly intrude upon the bargain struck between the parties who have entered into an important professional relationship. Moreover, the Seventh Circuit has noted that the Bankruptcy Code requires that attorneys involved in bankruptcy matters receive the same compensation as they would earn in performing similar services outside the bankruptcy context. *See In re UNR Indus., Inc.,* 986 F.2d 207, 209–10 (7th Cir. 1993).

■■■ The Court has considered all of the *Johnson* factors. It is clear that although some time and effort was required by the Attorney to draft a facially confirmable plan, the Court finds that there were excessive amounts of time charged for the results obtained. This case did not involve any new or difficult

1. The *Johnson* factors are referenced in LR 83.51.5 of the Rules of Professional Conduct for the Northern District of Illinois, applica-ble here via Local Bankruptcy Rule 608. All of these factors have been considered in this matter and are discussed hereinafter.

questions or call for any exceptional skills, inasmuch as the Attorney's utilization of the new model plan format, though commendable, was not an unusually onerous burden on her once the correct raw data was plugged into the blanks.

Furthermore, there was no showing that the Attorney was precluded from accepting other employment by taking this case. Moreover, there is no customary fee for this work in this district. The fee agreement provided for a flat or fixed fee for a portion of the work performed, with extra work to be provided on an hourly or lodestar basis. There was no showing of any specific time limitations imposed by the client or the circumstances. The result obtained in drafting, negotiating, filing and obtaining confirmation of the plan was good, but the price sought by the Attorney, especially under the terms of the fee agreement, is simply too high. The case was typical of many Chapter 13 cases filed in this district in which debtors attempt to save their homes and, as such, was neither undesirable nor unusually difficult, even though it was the second Chapter 13 case filed by these Debtors. The Court notes that the Attorney charged the Debtors in their last Chapter 13 case less than one-third of the instant fees she has requested in this case.

The Attorney's experience, reputation, and ability have been considered and her requested fees are substantially higher than those of other counsel in this district seeking fees in comparable cases. In part, this is attributable to the point made by both the Debtor and the Trustee that the Attorney is charging an hourly rate of $225.00 for services which should have been covered under the $1,695.00 flat fee per the agreement. The Court agrees with the point made by the Debtor that the flat fee covers all the services in connection with the preparation and filing of the plan, no matter how many iterations or drafts thereof, and all attendances at the confirmation hearing, not just the initial attendance. If the Attorney wanted to charge extra for those services, she could have drafted the fee agreement to so provide, as she made clear therein that attendance at more than one creditors' meeting would be an extra service for an additional charge. Because the Attorney drafted the fee agreement, any ambiguities will be construed against her. *See Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1036 (7th Cir.1998).

Accordingly, the Court concludes that the entries on 01/10/01; 02/26/01; 03/05/01; 03/09/01; 04/13/01; 04/16/01; 04/23/01; and 05/01/01 will be allowed in the amount of $1,695.00. This figure was the quoted and agreed upon amount for the basic services covered under the fee agreement. The Court will not award the Attorney the amount of $2,365.50 which is the sum total of these entries. The Attorney argues that she was required to itemized her time spent when seeking fees of $1,000.00 or more for representing Chapter 13 debtors. While she is correct that pursuant to Federal Rules of Bankruptcy Procedure 2002(a)(6) and 2016(a) time spent must be detailed, this requirement does not alter the fact that the Attorney and the Debtors agreed under the fee arrangement that certain basic services would cost the Debtors only $1,695.00. Hence, the Attorney was required to itemized these charges but, pursuant to the fee agreement, she is not entitled to compensation for those services in excess of $1,695.00.

Some of the entries reflected on the revised fee application appear to be extra services for which additional fees above the flat fee shall be allowed. These services cover defending a creditor's stay motion, review of creditors' proofs of claims, and responding to objections to confirmation. Thus, the Court will allow the entries on 01/26/01; 02/21/01; 02/26/01;

03/12/01; 04/17/01; 04/19/01; 04/30/01; and 05/23/01 for the additional sum of $1,230.50. Although the Debtor objects to the allowance of fees in excess of $843.00, the Debtors agreed to pay the flat fee of $1,695.00, plus additional fees and costs for the thirteen categories of "extras" listed in the fee agreement. The Court will hold the parties to the bargain that they made. Despite the Debtors' unhappiness with the bill submitted by the Attorney, they have been able to enjoy the benefits of the confirmed plan which was obtained through the efforts of the Attorney. Thus, the Court allows a total of $2,925.50 in fees for the services rendered by the Attorney.

The Court declines to award fees to the Attorney for the services she performed prior in time to the execution of the fee agreement on January 8, 2001, or subsequent to her discharge by the Debtors on June 1, 2001. The former category involves time entries totaling 8.7 hours for a sum of $1,957.50 and appears to cover services rendered in connection with the previous case of the Debtors. Those services are not compensable in this case. The latter category involves time entries totaling 3.3 hours in the sum of $572.50. These services were of no benefit to the Debtors or the estate and are not allowed. In addition, the Court will not allow the work performed on 02/28/01 because the time entry lacks the adequate detail.

Finally, the Court will not allow any of the time expended by the two attorneys referenced in the time entries on 02/15/01, 04/20/01 and 5/25/01. Pursuant to the fee agreement, those attorneys were not hired by the Debtors. Moreover, to award their fees would violate the clear fee splitting prohibition mandated by 11 U.S.C. § 504(a).[2] Section 504 prohibits fee splitting among attorneys unless they are partners or associates in the same professional association, partnership or corporation. *See* 11 U.S.C. § 504(b)(1); *see also In re Warner,* 141 B.R. 762, 765–66 (M.D.Fla. 1992); *In re Matis,* 73 B.R. 228 (Bankr. N.D.N.Y.1987); *In re Maller Restaurant Corp.,* 57 B.R. 72, 74 (Bankr.E.D.N.Y. 1985).

If the Attorney contemplated using other counsel to assist in this case, the fee agreement should have clearly provided and named such other attorneys to which the Debtors could have agreed. It is undisputed that these other attorneys are not part of the Attorney's professional corporation as either shareholders or associate employees. The Attorney's argument that the phrase " & Associates" in her firm name was intended to cover them and their services rendered in this case is of no consequence or effect. Hence, the Court enforces the statutory ban on fee splitting and disallows any compensation for their services.

### B. *Expense Reimbursement*

The Attorney seeks reimbursement of her expenses in the amount of $215.25. The Attorney bears the burden of establishing that she is entitled to certain expenses. *In re Convent Guardian Corp.,* 103 B.R. 937, 939 (Bankr.N.D.Ill. 1989); *In re Affinito & Son, Inc.,* 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Prods., Inc.,* 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). An expense is necessary if it was incurred because it

**2.** Section 504(a) provides:
(a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—
(1) any such compensation or reimbursement with another person; or
(2) any compensation or reimbursement received by another person under such sections.
11 U.S.C. § 504(a).

was required to accomplish the proper representation of the client. *See Wildman,* 72 B.R. at 731.

■ The Court will reimburse the Attorney for the $185.00 statutory expense of filing this case. However, the Court will not reimburse the postage expense in the amount of $30.25 because the Attorney failed to adequately describe what was mailed to whom and for what purpose.

## IV. *CONCLUSION*

For the foregoing reasons, the Court awards the Attorney compensation in the sum of $2,925.50 and authorizes reimbursement of expenses in the amount of $185.00. The Court sustains, in part, the objections of the Debtor and the Trustee.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

## *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 4th day of October, 2001, the Court hereby awards Susan G. Castagnoli compensation in the sum of $2,925.50 and authorizes reimbursement of expenses in the amount of $185.00 pursuant to 11 U.S.C. § 330. The Court sustains, in part, the objections thereto of the Debtor, Sebastian Palladino and Glenn B. Stearns, the Standing Chapter 13 Trustee.