**In re SOUTHERN DIESEL INC., Debtor.**

**No. 01–2030–WRS.**

United States Bankruptcy Court, M.D. Alabama.

May 25, 2004.

811

William P. Boggs, Clanton, AL, for Debtor.

Janie S. Gilliland, Montgomery, AL, for Trustee.

## MEMORANDUM DECISION

WILLIAM R. SAWYER, Chief Judge.

### I. PROCEDURAL SETTING

This Chapter 7 case is before the Court upon the Application of Janie S. Gilliland ("Gilliland") for compensation. (Doc. 76, amended at Doc. 83). The Trustee retained Gilliland as his attorney for the purpose of collecting accounts receivable and pursuing preference actions pursuant to 11 U.S.C. § 547. (Doc. 43). Gilliland's employment was approved by the Court on January 17, 2003. (Doc. 45). On November 21, 2003, Gilliland filed an application for professional fees, seeking compensation in the amount of $13,500.00. (Doc. 76). On February 24, 2004, the Court entered an order deferring ruling upon the application, finding that it was, in many instances, too vague to permit meaningful review by the Court. (Doc. 81). On March 25, 2004, Gilliland submitted an amended application, which cures some, but not all, of the problems with the application. (Doc. 83).

Gilliland seeks compensation in the amount of $13,395.00 for 89.3 hours of professional services, at a rate of $150.00 per hour.[1] The application includes a time entry report of eleven pages with approximately 114 separate billing entries. The Court's first observation is that no attempt

---

[1] The time entry records total 91.30 hours, though the narrative part of the fee application states that counsel is seeking compensation for only 89.3 hours. (Doc. 83).

has been made to group or divide the entries in any manner which would facilitate the Court's review of the application. It is easier to review a lengthy fee application when charges for related items are grouped together, so that the Court may see how much time was spent on each discrete task. The United States Trustee issued guidelines concerning this practice on January 30, 1996.[2] While neither the Bankruptcy Code nor the Bankruptcy Rules specifically require that counsel follow the Guidelines, they provide a useful format on which to model a fee application. When an application consists of more than two or three discrete tasks, the project billing format prescribed by the guidelines assists the Court in its review. As the Trustee filed eighteen adversary proceedings in this case, and undertook at least one additional task which did not result in the filing of a formal adversary proceeding, project billing would have aided the Court in this instance. To facilitate review, the Court will undertake its own division of the time entries, set forth in Part III below. The Court will first discuss matters of general application.

## II. GENERAL BILLING CONSIDERATIONS

The Court reviews applications for professional compensation pursuant to Section 330 of the Bankruptcy Code. "[T]he court may award to a … professional person … reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A). In making its determination, the Court is required to consider "all relevant factors," including the following:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

■ Section 330 sets up a two-tiered analysis. "First, the court must be satisfied that the attorney performed actual and necessary services. Second, the court must assess a reasonable value for those services." *In re Gencor Industries, Inc.*, 286 B.R. 170, 176–77 (Bankr.M.D.Fla. 2002). The applicant bears the burden to prove her entitlement to professional fees. *See e.g., In re Gold Seal Products Co., Inc.*, 128 B.R. 822, 828–29 (Bankr.N.D.Ala. 1991).

■ An award of attorney's fees under Section 330 is made using the "lodestar" method. *In re Gencor Industries, Inc.*, 286 B.R. at 177 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The starting point is the determination of a reasonable hourly fee multiplied by the number of hours reasonably expended. *Id.* Once this amount is determined, the court may, in its discretion, adjust the figure upward or downward. *Id.*

■ While neither the Bankruptcy Code nor the Bankruptcy Rules prescribe any

---

**2.** 28 C.F.R. Pt. 58, App. A copy of the guidelines may be found in the annotations following 11 U.S.C. § 330 in *Norton Bankruptcy* *Law and Practice, 2d.*, Thompson & West, Pub., 2003 2004 edition or on the internet at www.usdoj.gov/ust/fee0206.htm.

particular format for the application, it must be specific enough so that the Court can meet its responsibility to provide meaningful review of the application. The instant application is deficient in several respects. These deficiencies will be discussed in the detailed review set forth in Part III *infra*.

### III. REVIEW OF DISCRETE TASKS

The Court will divide the charges into the following fifteen separate categories: (1) Asplundh Tree, Adv. Pro. No. 03–3032; (2) AG Systems, Inc., Adv. Pro. No. 03–3034; (3) Fancher and Russell, Adv. Pro. Nos. 03–3065, 03–3035; (4) Engine Distributors, Adv. Pro. No. 03–3043; (5) NAPA Auto Parts, Adv. Pro. No. 03–3044; (6) Edwards Diesel and Tractor, Adv. Pro. No. 03–3047; (7) Controls, Inc., Adv. Pro. No. 03–3050; (8) Diesel Power Equipment Co., Adv. Pro. No. 03–3051; (9) Industrial Diesel, Adv. Pro. No. ·03–3052; (10) MBNA, Adv. Pro. No. 03–3053; (11) Nixon Power, Adv. Pro. No. 03–3062; (12) Janice Hull; (13) Vague Entries; (14) Lumped Entries; and (15) Unnecessary Services.

The Court will undertake its review as follows. The Court has examined the entries on the invoice which is attached to the application for professional compensation. (Doc. 83). Entries are identified by date and amount of time charged. Each entry will be assigned to one of the fifteen categories enumerated above. The Court will review these entries on a category by category basis.

#### 1. Asplundh Tree, Adv. Pro. No. 03–3032

The following entries appear to relate to this matter: 3/4/03–0.1 hours; 3/24/03–0.6 hours; and 4/8/03–0.7 hours, for a total of 1.4 hours. These charges are allowed as requested.

#### 2. A.G. Systems, Adv. Pro. No. 03–3034

In this Adversary Proceeding, the Trustee brought suit to collect accounts receivable owed by A.G. Systems to Southern Diesel. A complaint was filed on February 14, 2003, and a consent judgment was entered on June 11, 2003. (Adv.Pro. No. 03–3034, Doc. 6). The following charges appear to relate to this matter: 2/27/03–0.4 hours; 4/21/03–0.4 hours; 5/6/03–2.1 hours; 5/16/03–0.2 hours; 5/20/03–1.0 hours; 5/27/03–0.2 hours; 10/13/03–0.5 hours; 11/12/03–0.1 hours; 11/14/03–0.2 hours; and 11/17/03–0.3 hours. These ten entries total 5.4 hours. These charges are allowed as requested.

#### 3. Fancher and Russell, Adv. Pro. Nos. 03–3035, 03–3065

These two adversary proceedings are related and will be considered together. The following charges relate to these two adversary proceedings: 2/26/03–0.4 hours; 3/19/03–1.5 hours; 3/21/03–0.5 hours; 3/26/03–0.2 hours; 6/12/03–0.5 hours; 6/24/03–1.0 hours; 7/3/03–0.5 hours; 7/5/03–0.3 hours; 7/8/03–2.0 hours; 7/9/03–0.2 hours; 7/22/03–1.3 hours; 9/4/03–0.7 hours; 9/19/03–0.3 hours; 9/22/03–0.5 hours; 9/30/03–1.5 hours; 10/6/03–2.0 hours; 10/7/03–1.0 hours; 10/14/03–1.0 hours; 10/24/03–0.4 hours; and 10/28/03–3.0 hours [trial], 10/28/03–2.0 hours [preparation]. These twenty-one entries total 20.8 hours.

On February 14, 2003, the Trustee brought suit against Mike Russell ("Russell") claiming that he owed the estate $5,435.98 evidenced by an invoice dated February 6, 2001. (Adv.Pro. No. 03–3035, Doc. 1). The matter was tried before the Court on October 29, 2003. After hearing the evidence, the Court dismissed the Trustee's complaint. (Adv.Pro. No. 03–3035, Doc. 15).

The evidence at trial was clear and uncontroverted by the Trustee. Russell is a farmer who needed to have a diesel generator repaired. Russell had a longstanding relationship with an individual named E.C. Fancher ("Fancher"), who does such work. Russell testified that he telephoned Fancher and that Fancher repaired Russell's diesel engine. Russell paid his bill in full by way of a check dated March 16, 2001, which was made payable to Fancher.[3] Russell testified that he did business with Fancher in his individual capacity and that he was not aware that Southern Diesel had any connection with this matter. Russell testified that he was aware that Fancher was employed, in some capacity, at Southern Diesel and that he had communications with Fancher at Southern Diesel. The Trustee was unable to produce a work order, a contract, or any documentary evidence of any kind in order to prove that there had been a contractual relationship between Southern Diesel and Russell.

There are several aspects of the Russell Adversary Proceeding which the Court finds troubling. First, the complaint did not have an invoice, contract or document of any kind attached to it. An invoice was ultimately produced at trial, however, its authenticity was undermined by Russell's testimony that he had not seen it until very recently. The Trustee had no evidence to controvert that point. Second, an invoice prepared after a complaint is filed, more than two years after the services in question were rendered, is of virtually no probative value. The true dispute, it would appear, was between the estate and Fancher, whom the Trustee contended collected a debt owed to Southern Diesel. Fancher testified at trial that the Russell job was his job and not the property of Southern Diesel. Again, the Trustee had no evidence to controvert this claim. Notwithstanding the fact that Gilliland billed over twenty hours for this matter, it is clear that no meaningful preparation had been done. The extent of Gilliland's advocacy in this matter was that she argued with adverse witnesses for two hours and attempted to force them to admit things which did not appear to be true. Gilliland did not offer any testimony from any former employee of Southern Diesel who might have been able to support her contention that the money was owed to Southern Diesel and not to Fancher. One would think that a bill for over $5,400.00, which was unpaid for over two years, would generate some correspondence or documentation in the files of Southern Diesel. If any such documentation exists, it should have been offered into evidence. On the other hand, if there is no such documentation, the claim that Russell owed money to Southern Diesel would be further undermined.

The Court will deny compensation for all of the services enumerated above. By bringing suit with no probative evidence in support of the estate's position, the Court finds that these services were not "reasonably likely to benefit the debtor's estate; or necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii). The Court stresses that compensation is not denied merely because the Trustee lost the case. One may bring suit in good faith, but lose the case for any number of reasons. First, there may be a good faith dispute as to the application of the law to the facts of the case. Second, there may be facts in dispute which are resolved against the Trustee. Neither of these situations is present in this instance. In this

---

3. A copy of the check was offered into evidence at trial. Another copy of the check is attached as an exhibit to the complaint in

*McGregor v. E.C. Fancher,* Adv. Pro. No. 03–3065 (Doc. 1).

case, the Trustee had no evidence, except a post-dated invoice which was thoroughly discredited at trial. Indeed, as early as March 19, 2003, one month after the complaint was filed, it appeared as if Gilliland realized that there was nothing to her suit, when she moved to dismiss her complaint. (Adv.Pro. No. 03–3035, Doc. 3).

On March 26, 2004, Gilliland amended her application for professional compensation, stating, in part, as follows: "At trial, Mr. And Mrs. Russell testified that they had contracted with Southern Diesel to do the work concerning the generator." (Doc. 83). This is incorrect. Russell testified that he contacted Fancher to repair the generator and that Fancher asked that the check be made payable to him. The trial of this matter was striking in that the Trustee had no evidence whatsoever in support of his claim. Gilliland's billing records indicate that considerable time was charged, but the trial revealed that very little of substance was actually accomplished. Trials are won with evidence. Endless conferencing and posturing do not add anything of value to the case.

### 4. Engine Distributors, Adv. Pro. No. 03–3043

The following entries appear to relate to this Adversary Proceeding: 4/21/03–0.2 hours; 4/22/03–1.0 hours;[4] 5/9/03–0.4 hours; 5/19/2003–1.0 hours; 5/28/03–0.1 hours; 6/5/03–0.2 hours; 6/16/03–0.1 hours; 6/17/03–0.2 hours; and 6/18/03–0.5 hours, for a total of 3.7 hours. This amount is allowed as requested.

### 5. NAPA Auto Parts, Adv. Pro. No. 03–3044

The Court was able to identify only one entry which relates to this Adversary Pro-

ceeding: 3/19/03–0.2 hours. This amount is allowed as requested.

### 6. Edwards Diesel and Tractor, Adv. Pro. No. 03–3047

The following entries appear to relate to this Adversary Proceeding: 6/16/03–1.0 hours; 6/17/03–0.2 hours; 6/23/03–0.5 hours; 6/24/03–0.3 hours; and 7/1/03–0.2 hours; for a total of 2.2 hours. This amount is allowed as requested.

### 7. Controls, Inc., Adv. Pro. No. 03–3050

The Court was able to identify the following entries which appear to relate to this Adversary Proceeding: 4/1/03–0.5 hours; 4/7/03–0.2 hours; 6/23/03–0.5 hours; and 7/2/2003–0.2 hours; for a total of 1.4 hours. This amount is allowed as requested.

### 8. Diesel Power, Adv. Pro. No. 03–3051

■ This is an adversary proceeding to recover a preference pursuant to 11 U.S.C. § 547. The complaint was filed on March 7, 2003, and seeks return of a payment in the amount of $10,441.79. Review of the complaint in the Court's file indicates that there is nothing remarkable about this particular action. Trustee Tom McGregor has filed hundreds of preference actions in recent years. On June 13, 2003, Gilliland moved for default judgment. (Adv.Pro. No. 03–3051, Doc. 6). On June 20, 2003, the Court entered judgment by default in favor of the Trustee. (Adv.Pro. No. 03–3051, Doc. 8).

On June 26, 2003, Diesel Power moved to set aside the default judgment. (Adv. Pro. No. 03–3051, Doc. 10). The motion is remarkable in that it does not allege either excusable neglect or that Diesel Power has

---

4. The fee application has duplicate entries for 2.00 hours on April 22, 2003: 1.0 hour is charged to attend a status conference for four adversary proceedings at the Bankruptcy Court and 1.0 hour is charged for a confer-ence with Rob Reynolds, counsel for Engine Distributors. For the reasons discussed in Section III, Part 13, *infra,* the Court will allow only one of the charges.

a meritorious defense to the action. Rather, the motion alleges that counsel was not retained until June 20, 2003 and that a responsive pleading immediately was prepared and filed. This is undoubtedly true, but clearly insufficient as a matter of law. *See* FED. R. BANKR.P. 9024. The Court's record indicates that the Defendant was served properly on March 18, 2003. (Adv. Pro. No. 03–3051, Doc. 5). Why Diesel Power waited three months to retain counsel is not explained. Diesel Power's Motion to Set Aside the Default Judgment was scheduled for hearing on September 9, 2003. Based upon the Court's records, there is no reason to expect that the motion would have been granted. However, the Court never held the hearing because the Defendant withdrew the motion in light of the Trustee's willingness to compromise the claim. (Adv.Pro. No. 03–3051, Doc. 12). The Trustee filed a motion to compromise in the main bankruptcy case on September 30, 2003. (Doc. 71). The settlement was approved on November 19, 2003. (Doc. 75).

The following entries appear to be related to this Adversary Proceeding: 7/11/03–0.2 hours; 8/1/03–0.5 hours; 8/1/03–0.2 hours; 8/2/03–1.0 hours; 8/27/03–1.0 hours; 8/29/03–0.2 hours; 9/4/03–0.2 hours; 9/8/03–0.3 hours; 9/8/03–0.5 hours; 9/22/03–0.2 hours; 10/6/03–0.3 hours; 11/12/03–0.4 hours; and 11/19/03–0.4 hours. These thirteen entries total 5.4 hours. There is no explanation as to why the Trustee and his lawyer thought it wise to settle a $10,000+ judgment for $6,500.00. This is especially perplexing given that nothing of substance was alleged in motion to set aside the default judgment. (Adv.Pro. No. 03–3051, Doc. 10). The Trustee makes a generalized claim about the costs of litigation. (Doc. 71). Had the matter not been settled, there is no doubt that the Trustee would have had to expend additional funds to collect a judgment from an out-of-state defendant. Moreover, Section 547 of the Bankruptcy Code does not have a fee shifting provision, making a compromise of some amount reasonable. *See* 11 U.S.C. § 547. However, the flurry of telephone calls and correspondence was, under the circumstances, excessive. The Court will allow 3.0 hours and disallow the remaining 2.4 hours.

### 9. *Industrial Diesel, Adv. Pro. No. 03–3052*

The following entries appear to relate to this Adversary Proceeding: 3/24/03–1.0 hours; 6/16/03–0.5 hours; 6/19/03–0.5 hours; 6/19/03–0.2 hours; and 6/23/03–0.5 hours; for a total of 2.7 hours. This amount is allowed as requested.

### 10. *MBNA, Adv. Pro. No. 03–3053*

The following entries appear to relate to this Adversary Proceeding: 4/23/03–0.2 hours; 5/9/03–0.5 hours; 6/5/03–0.4 hours; 6/12/03–0.2 hours; 6/13/03–0.2 hours; 6/16/03–0.5 hours; and 6/18/03–0.5 hours; for a total of 2.5 hours. This amount is allowed as requested.

### 11. *Nixon Power Services, Adv. Pro. No. 03–3062*

The following entries appear to relate to this Adversary Proceeding: 2/20/03–0.5 hours; 2/20/03–0.2 hours; 2/21/03–0.5 hours; 3/4/03–0.2 hours; 3/7/03–0.2 hours; 3/11/03–0.2 hours; 3/18/03–0.6 hours; 3/21/03–1.0 hours; 3/24/03–0.1 hours; 6/16/03–0.1 hours; and 6/19/03–0.2 hours; for a total of 3.8 hours. This amount is allowed as requested.

### 12. *Janice Hull*

The detailed billing records include three entries referring to "Janice Hull." These entries are as follows: 2/24/03–0.2 hours; 2/24/03–0.7 hours; and 2/24/02–0.2 hours; for a total of 1.1 hours. It appears that Gilliland investigated a possible pref-

erence action and elected not to bring suit. As it appears that this investigation was reasonable under the circumstances, this amount is allowed as requested.

### 13. Vague entries

■ This group of entries includes those which the Court is unable to place in any of the other categories because the description of the services performed is too vague to permit assignment with any degree of comfort. These entries are as follows: 1/23/03–2.0 hours; 1/28/03–1.0 hours; 2/14/03–4.0 hours; 2/21/03–5.2 hours; 2/24/03–0.2 hours [2 telephone calls]; 2/24/03–0.2 hours [review]; 3/5/03–0.2 hours; 3/5/03–5.5 hours; 3/14/03–4.5 hours; 3/18/03–1.0 hours; 3/21/03–0.2 hours; 3/26/03–0.3 hours; 4/21/03–0.4 hours; and 4/24/03–0.2 hours. All of the time requested for these entries is disallowed because the entries are too vague to permit review. For example, there is an entry on February 14, 2003, which states "[p]repared adversary proceedings for five (5) accounts receivable Adversary Proceedings, 4.00." (Doc. 83). The entry does not specify which five adversary proceedings are involved. On February 21, 2003, another entry states, "[r]evise and prepare five (5) preference actions (APs), 5.20". It is unclear whether these entries are for the same or different adversary proceedings. Because one entry references "accounts receivable" and the other refers to "preference actions," it would suggest that they may be related to two different groups of adversary proceedings. On the other hand, the February 21, 2003 entry contains the word "revise," which suggests that there was a change from an earlier entry. If these two entries refer to the same five actions, 9.2 hours to prepare "cookie cutter" complaints seems excessive. However, the Court should not have to guess as to what counsel is referring. These fourteen entries, which total 24.9 hours, are disallowed in their entirety.

In addition to these fourteen entries, the Court will include two more entries in this category. Both entries are dated April 22, 2003, with identical descriptions, "attend Status Conference for four (4) adversary proceedings at Bankruptcy Court." Unfortunately, the entries do not indicate which four adversary proceedings. Assuming that both entries refer to the same four adversary proceedings, this is a duplicate entry. Therefore, one charge for 1.0 hours is allowed and the remainder is disallowed.

### 14. Lumped entries

■ The Court observed a number of billing entries which appear to be "lumped." The practice of lumping is often defined as grouping two or more separate and unrelated activities in one billing entry. *See In re Leonard Jed Co.,* 103 B.R. 706, 713 (Bankr.Md.1989) ("Lumping ... refers to the grouping of different tasks within one block of time on a time record"). Lumping destroys the Court's ability to review counsel's work for reasonableness.

It is a practice universally disapproved of by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.

*Id.; see also In re Poseidon Pools of America, Inc.,* 180 B.R. 718, 731 (Bankr. E.D.N.Y.1995) (citations omitted). In the Court's judgment, the following entries have improperly lumped two or more such unrelated tasks: 5/8/03–0.8 hours; 5/28/03–0.2 hours; 6/12/03–2.0 hours; 6/23/03–0.6

hours; 7/15/03–0.2 hours; 7/24/03–0.5 hours; 7/25/03–0.3 hours; 9/5/03–0.9 hours; 9/16/03–1.5 hours; and 9/30/03–0.3 hours; for a total of 7.3 hours.[5] This amount is disallowed.

### 15. Unnecessary services

■ Compensation for services which are not "reasonably likely to benefit the debtor's estate; or necessary to the administration of the case" is not allowed. 11 U.S.C. § 330(a)(4)(A). The Court has examined its docket and the application for compensation and cannot find any justification for the following six Adversary Proceedings: (a) *Murdock*, Adv. Pro. No. 03–3033 (suit was filed and a default judgment was taken with no apparent effort to determine whether the defendant had the capacity to pay a judgment); (b) *Newage International Bank of America*, Adv. Pro. No. 03–3045 (suit was brought and subsequently dismissed for want of prosecution); (c) *Central Diesel & Supply*, Adv. Pro. No. 03–3046 (suit was brought to recover a preference in the amount of $3,200.00, default judgment taken and no further action taken); (d) *Engine Power Source*, Adv. Pro. No. 03–3048 (suit was brought to collect a preference and subsequently dismissed on the Trustee's motion; no explanation given); (e) *GMI USA Corp.*, Adv. Pro. No. 03–3049 (default judgment on preference action taken, no further action); and (f) *Koehn*, Adv. Pro. No. 03–3064, (default judgment taken in action to collect a preference, no explanation given). The following entries appear to relate to these Adversary Proceedings: 3/21/03–0.2 hours; 3/26/03–0.2 hours; 4/8/03–0.5 hours; 4/8/03–0.2 hours; 4/21/03–0.5 hours; 4/21/03–0.3 hours; 5/1/03–0.2 hours; 5/28/03–0.2 hours; 6/24/03–0.2 hours; 6/25/03–0.4 hours; 7/25/03–0.5 hours; 7/28/03–0.5 hours; 7/30/03–0.3 hours; 8/4/03–0.5 hours; 9/16/03–0.5 hours; and 9/22/03–0.3 hours; for a total of 5.5 hours.

Before one brings suit to collect a money judgment, as a general rule, one should make an effort to determine two things. First, counsel should determine whether the client has a valid cause of action. Counsel should conduct a sufficient investigation into the factual underpinnings of the cause of action in order to determine whether the putative defendant is, in fact, liable. As part and parcel of that investigation, one should look at the available evidence and make a preliminary determination as to whether it is legally sufficient. This might entail looking at contracts, invoices, correspondence and the like. If the client is unable to marshal sufficient documentation and evidence, counsel should not bring suit. If counsel determines that a putative defendant may have legal liability, he should next make an effort to determine whether the defendant has the financial capacity to pay a judgment. How this might be determined will vary with the facts and circumstances of the individual case. One does not simply bring suit to see what happens. As Gilliland has not demonstrated that the services related to these six adversary proceedings were necessary, these amounts are not allowed.

■ The Court has observed a phenomena which bears consideration both in this case and in others in which the facts warrant. In this case, the Trustee collected approximately $110,000.00, without any assistance from counsel. It is appropriate that the Trustee retain counsel and consider bringing any appropriate legal action to collect money due to the estate. When there is money in the estate, it may be tempting to bring actions of questionable legal merit or actions against insolvent

---

5. For example, the entry for September 30, 2003, states, "review electronic messages RE: Randy Koehn and NAPA; motion to compromise in Diesel Power, 0.30."

defendants to create work for counsel for which the estate may be billed. The Court will examine carefully applications such as this to make sure that the services were actual and necessary and performed within a reasonable amount of time. This is not to say that counsel will not be compensated if her efforts do not yield a return; however, compensation will not be allowed when counsel fails to carry her burden to show that the services were reasonable at the time they were rendered. The Court may, on its own motion, reduce the amount of compensation to be awarded. 11 U.S.C. § 330(a)(2).

## IV. SUMMARY

The allowance of professional fees in this case may be summarized as follows:

| PROJECT | HOURS REQUESTED | HOURS ALLOWED |
|---|---|---|
| 1. Asplundh Tree | 1.4 | 1.4 |
| 2. AG Systems | 5.4 | 5.4 |
| 3. Fancher & Russell | 20.8 | 0.0 |
| 4. Engine Distributors | 4.7 | 3.7 |
| 5. NAPA | 0.2 | 0.2 |
| 6. Edwards Diesel | 2.2 | 2.2 |
| 7. Controls | 1.4 | 1.4 |
| 8. Diesel Power | 5.4 | 3.0 |
| 9. Industrial Diesel | 2.7 | 2.7 |
| 10. MBNA | 2.5 | 2.5 |
| 11. Nixon Power | 3.8 | 3.8 |
| 12. Janice Hull | 1.1 | 1.1 |
| 13. Vague Entries | 26.9 | 1.0 |
| 14. Lumped Entries | 7.3 | 0.0 |
| 15. Unnecessary Services | 5.5 | 0.0 |
| Totals | 91.30 | 28.40 |

28.4 hrs. @ $150.00 = $4,260.00

## V. CONCLUSION

The application for compensation is allowed, in part, in the amount of $4,260.00. For the reasons set forth above, to the extent that the compensation requested exceeds this amount, the application is denied.