In re LAS VEGAS MONORAIL
COMPANY, Debtor.

No. BK–S–10–10464–BAM.

United States Bankruptcy Court,
D. Nevada.

Sept. 14, 2011.

Erika Pike Turner, Gabrielle A. Hamm, Gerald M. Gordon, Matthew C. Zirzow, William M. Noall, Gordon & Silver, Ltd., Jonathan J. Hansen, Hansen Rasmussen, LLC, Las Vegas, NV, for Debtor.

## OPINION ON ALLOWANCE OF INTERIM FEES

BRUCE A. MARKELL, Bankruptcy Judge.

### I. INTRODUCTION

Gordon Silver and Jones Vargas, two law firms, represent the debtor, Las Vegas Monorail Company ("LVMC"). Gordon Silver is LVMC's primary restructuring counsel. Jones Vargas is their special corporate counsel. LVMC's case has been long, and both law firms have requested and received interim fees under Section 331 of the Bankruptcy Code.[1] On March 14, 2011, Gordon Silver filed its Third Interim Fee Application, Dkt. No. 703, in which it requested allowance of $169,600 in interim legal fees and reimbursement of $3,797.36 in expenses. That same day, Jones Vargas filed its Second Interim Fee Application, Dkt. No. 705, requesting the allowance of $129,136.50 in legal fees and reimbursement of $27,752.62 in expenses. Although there is no basis upon which to object to many of the items in these interim fee applications, they are unusual in one respect. In each application, several of the time entries are redacted, and each application is silent as to the reason for the redactions. It was not until the hearing on the interim fee applications that the attorneys claimed the attorney-client privilege required them to redact certain entries.

For the reasons stated below, the court disallows, without prejudice, the portions of the interim fee applications that relate to the redacted entries.

### II. BACKGROUND

LVMC owns and operates a monorail system that traverses 3.9 miles near the Las Vegas "Strip." LVMC's system consists of an elevated track upon which fully-automated monorail cars travel between seven stations, directly serving eight hotels

---

1. Unless specified otherwise, all Chapter and Section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, with all Civil Rule references to the Federal Rules of Civil Procedure, Rules 1–86.

and the Las Vegas Convention Center.[2] While expectations for the system's success were high when construction was completed in 2004, LVMC has continually failed to meet ridership projections. Despite stated and restated plans to connect to Downtown Las Vegas or the local airport, the monorail remains underutilized and faces an uncertain future.

LVMC filed for bankruptcy under chapter 11 on January 13, 2010. Despite intense negotiations with its creditors and a nascent stabilization of the Las Vegas tourism industry, nineteen months have elapsed and no plan of reorganization has been confirmed. The prospect of LVMC successfully reorganizing is, at present, far from a sure bet.

Gordon Silver and Jones Vargas each sought and received the court's approval of their employment. Each also sought and received approval of procedures allowing for interim monthly compensation. Pursuant to these interim compensation procedures, as set forth in *United States Trustee v. Knudsen Corp. (In re Knudsen Corp.)*, 84 B.R. 668 (9th Cir. BAP 1988), Gordon Silver and Jones Vargas submit monthly billing statements to LVMC. If no party objects, they receive eighty percent of the fees and all reimbursements requested in the monthly billing statement. The amounts paid are subject to court approval, both on an interim and on a final basis.[3]

To date, the court has approved $859,300 in interim fees for Gordon Silver and $78,727 in interim fees for Jones Vargas. As indicated before, Gordon Silver seeks $169,600 in additional interim fees, and Jones Vargas seeks $129,136.50 in additional interim legal fees.[4] The respective interim fee applications, while similar in many respects to those already filed, differ in one respect. Each contains a significant number of redacted time entries.

The following is a selection of redacted time entries taken from Jones Vargas' application:

- Continue work on Train 9 damage issues; telephone conference with T. McFadden regarding [redacted]; vinyl wrap removal issues. ($1254.00)

- Review email regarding [redacted]. ($260.00)

- Email and telephone conference with I. Reisman regarding [redacted]; continued review of [redacted]. ($594.00)

- Research and strategize regarding [redacted]. ($260.00)

---

**2.** LVMC served nine hotels prior to the recent closure of the Sahara Hotel and Casino.

**3.** Pursuant to the administrative order for each, Gordon Silver and Jones Vargas are required to file interim fee applications 120 days following the petition date and each 120 days thereafter. All fees requested by Gordon Silver and Jones Vargas are subject to final approval at the conclusion of LVMC's case.

**4.** If the current award is made, the total amount of legal fees will exceed 2.50% of LVMC's value as reflected in its disclosure statement. The court is concerned that this high figure, which doesn't include similarly high financial advisor fees, has been incurred before confirmation. The major bondholders, who hold nearly 99% of the debt in this case, have not, however, objected. Notwithstanding this curious silence, the court cautions counsel, as it has cautioned counsel at every interim fee application thus far, that interim approval is not final approval, and that counsel will bear a heavy burden of justifying such fees in any final fee application. This is particularly so given the attorneys' puzzling failure to acknowledge the redactions in the text of the interim fee applications at issue and their failure to assert in writing the attorney-client privilege with respect to those redactions. In this court's opinion, such failures fall below the standard for reorganization or corporate counsel seeking up to $700.00 an hour for its services.

- Telephone conference with C. Myles regarding [redacted]; research [redacted]; start drafting memo; research station locations. ($1,122.00)
- Email to C. Myles regarding [redacted]. ($132.00)
- Draft brief memo e-mail to K. Ballard regarding [redacted]; perform additional research regarding same. ($259.00)
- Research [redacted]; research issue in the Federal Tax context; conference with K. Ballard regarding same. ($259.00)
- Research [redacted]. ($495.00)

The following is a selection of redacted time entries taken from Gordon Silver's application:

- Research/draft memorandum regarding [redacted]. ($1,421.00)
- Research [redacted]. ($882.00)
- Conference call with Mr. Myles, [redacted]. ($687.50)
- Call with Mr. Myles regarding [redacted]. ($125.00)
- Research whether [redacted]. ($1,617.00)
- Research regarding [redacted]. ($518.00)
- Review [redacted]. ($1,260.00)
- Draft memo regarding [redacted]. ($370.00)
- Revise memo discussing [redacted]. ($222.00)
- Draft memo regarding [redacted] and related research. ($277.50)
- Analyze [redacted] issues. ($420.00)

The number of redacted time entries in each interim fee application is significant. In Gordon Silver's application, the firm redacted 6% of the time entries (constituting 21 separate time entries accounting for 28.6 hours of work and $9,657 in fees). In Jones Vargas' application, the firm redact- ed 13% of the time entries (constituting 48 separate time entries accounting for 60.6 hours of work and $16,313 in fees). As noted before, the interim fee applications not only failed to explain the redactions, they never even mentioned them.

### III. ALLOWANCE OF PROFESSIONAL FEES UNDER 11 U.S.C. § 330(a)(4)(A)

#### A. The Standard—11 U.S.C. § 330(a)(4)(A)

■ Like every other bankruptcy court, this court "has a duty to review fee applications notwithstanding the absence of objections by the trustee, debtor or creditors." *In re Auto Parts Club, Inc.*, 211 B.R. 29, 33 (9th Cir. BAP 1997) (citing *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir.1994)); *accord Tri–State Financial, LLC v. Lovald*, 525 F.3d 649, 655 (8th Cir.2008) (citing *In re Clark*, 223 F.3d 859, 862 (8th Cir.2000)); *In re Buckner*, 350 B.R. 874, 878 (Bankr.D.Idaho 2005).

■ Under the Bankruptcy Code, the court shall disallow compensation in instances of: (1) "unnecessary duplication of services;" or (2) services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A); *see In re Smith*, 317 F.3d 918, 926 (9th Cir. 2002) (the court "cannot award fees if the services rendered were unnecessarily duplicative"). While the services need not "result in a material benefit to the estate[,]" approval of fees is contingent upon a showing "that the services were 'reasonably likely' to benefit the estate at the time the services were rendered." *In re Mednet*, 251 B.R. 103, 108 (9th Cir. BAP 2000).

■ The fee applicant bears the burden of proving that the fees requested are proper under Section 330(a)(4)(A). *In re Eliapo*, 298 B.R. 392, 402 (9th Cir. BAP

2003) (citing *In re Dalessio,* 74 B.R. 721, 724 (9th Cir. BAP 1987)) *rev'd on other grounds,* 468 F.3d 592, 595 (9th Cir.2006); *see also In re Clark,* 223 F.3d 859, 863 (8th Cir.2000) (finding that burden of proof is on the applicant for purposes of Section 330) (citing *In re Mahendra,* 131 F.3d 750, 757 (8th Cir.1997)); *In re I Don't Trust,* 143 F.3d 1, 4 (1st Cir.1998) (same); *In re Rogers,* 401 B.R. 490, 494 (10th Cir. BAP 2009) (holding that "attorney seeking approval" of fee application pursuant to Section 330 must establish the propriety of "each dollar for each hour above zero") (citing *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1203 (10th Cir.1986)).

▋ In order to carry its burden under Section 330(a)(4)(A), the fee applicant must submit detailed evidence supporting the fee application, such as itemized contemporaneous time records. *In re Jastrem,* 253 F.3d 438, 443 (9th Cir.2001) (holding that the bankruptcy court's reduction of requested fees was not an abuse of discretion when fee applicant had failed to provide sufficient evidence to support fee application); *In re Buckridge,* 367 B.R. 191, 199 (Bankr.C.D.Cal.2007) (finding request for compensation proper when "supported by contemporaneous time records establishing the nature and extent of the services rendered on behalf of the estate") (citing *In re Roderick Timber Co.,* 185 B.R. 601, 605–06 (9th Cir. BAP 1995)); *In re Recycling Industries, Inc.,* 243 B.R. 396, 406 (Bankr.D.Colo.2000) (reducing number of allowed hours when requesting "attorney's time records [were] 'sloppy' and 'imprecise' " and further failed to document how "large blocks of time" were "utilized") (citing *Case v. Unified School Dist.,* 157 F.3d 1243, 1250 (10th Cir.1998)); *In re Bennett Funding Group, Inc.,* 213 B.R. 234, 244 (Bankr.N.D.N.Y.1997) (finding that "applicant must support its request with specific, detailed and itemized documentation") (citing *In re Poseidon Pools of America, Inc.,* 180 B.R. 718, 729 (Bankr.E.D.N.Y.1995)).[5]

▋ If the evidence supporting a fee application "is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services." *Bennett,* 213 B.R. at 245 (citing *Poseidon,* 180 B.R. at 730); *see also In re Baker,* 374 B.R. 489, 497 (Bankr.E.D.N.Y.2007) (finding that entries containing vague characterizations of time spent or services provided are properly disallowed); *In re Teraforce Tech. Corp.,* 347 B.R. 838, 859 (Bankr.N.D.Tex. 2006) (same); *In re Southern Diesel,* 309 B.R. 810, 817 (Bankr.M.D.Ala.2004) (disallowing entire fee application because individual time entries were "too vague to permit review").

As it is the fee applicant's burden to show that the fees requested are justified, a court cannot assume that vague or insufficient evidence satisfies the burden. *In re Palladino,* 267 B.R. 825, 834 (Bankr. N.D.Ill.2001) (declining to "assume any expense is necessary") (citing *In re Lindberg Prods., Inc.,* 50 B.R. 220, 221 (Bankr. N.D.Ill.1985)); *Bennett,* 213 B.R. at 245 (holding that "it is not the court's responsibility to recognize or assume that a vague time entry meets" the requirements of Section 330(a)(4)(A)); *In re Paul,* 100 B.R. 38, 41 (Bankr.D.Colo.1989) (finding that "it

---

**5.** The fee applications in question here are interim in nature; however, this does not change the analysis. *In re ACT Mfg., Inc.,* 281 B.R. 468, 480 (Bankr.D.Mass.2002); *Bennett,* 213 B.R. at 244 (finding that interim fee applications "submitted pursuant to [Section] 331 ... are judged under the same standards as final applications. ...") (citing *In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474, 482 (Bankr.D.Utah 1991) (further citations omitted)).

is not the Court's responsibility to justify" fees requested) (citing *In re Wildman*, 72 B.R. 700, 708 (Bankr.N.D.Ill.1987)); *see also ACT*, 281 B.R. at 483 (placing responsibility on the professional requesting allowance of fees "to clearly and concisely describe what was done, why it was done, and how the outcome benefitted the estate").

### B. Analysis of Jones Vargas' and Gordon Silver's Interim Fee Applications

█ Jones Vargas and Gordon Silver argue that they are placed in an untenable position. They performed work. They believe they should be paid for it. Because of the confidential nature of this work, however, they believe they are required to invoke the attorney-client privilege on behalf of their client and protect the nature of the work from disclosure.[6] But, as discussed above, attorneys must adequately disclose and describe the work for which they seek payment in an interim fee application.

█ The court recognizes that this tension creates a predicament for Jones Vargas and Gordon Silver. But Jones Vargas and Gordon Silver still must comply with Section 330(a)(4)(A).[7] The duty of

an attorney to protect the attorney-client privilege, or to prevent the dissemination of other confidential information, does not override the court's duty to review fees. When attorneys determine that "information should not be provided because of its sensitive nature," they prevent the court from fulfilling its responsibilities under Section 330(a)(4)(A). In such cases, the court must disallow fees, as it "is impossible to determine whether a billing entry is reasonable or necessary" when "the description is redacted." *In re Tri–State Plant Food, Inc.*, 273 B.R. 250, 267 (Bankr. M.D.Ala.2002). Put simply, "[p]rofessionals may not properly avoid scrutiny of their fees by redacting the description of the billing entry." *Id.*

The law firms had alternatives to their elected strategy but declined to pursue them. Neither Jones Vargas nor Gordon Silver sought to file its fee application under 11 U.S.C. § 107 or Rule 9018, each of which provide a mechanism for the protection of information relating to secret, confidential, scandalous, or defamatory matters. 11 U.S.C. § 107; FED. R. BANKR.P. 9018.[8] Any of these approaches would have at least given the court the opportunity to consider whether, accompanied by a privilege log, the interim fee

---

**6.** This premise is somewhat questionable with respect to some of the time entries. For instance, research on a topic is not normally a confidential communication protected by the attorney-client privilege. THE LAW OF LAWYERING §§ 9.7, 9.14 (Geoffrey C. Hazard, W. William Hodes, & Peter R. Jarvis eds., 3d ed. 2011). And neither law firm has asserted any other privilege, including the attorney work-product immunity, with respect to the redacted entries.

**7.** When considering the question, at least one court concluded that "[m]anifestly, the attorney-client privilege is not involved in fee applications and the services performed should not be a secret known only to those familiar with the encoded information." *In re Greenwald*, 145 B.R. 794, 795 (Bankr.S.D.N.Y.

1992). This court declines to go that far. There may be situations where it is appropriate for the fee applicant to protect the attorney-client privilege or refuse to divulge other confidential information. However, attorneys can only protect such information to the extent it does not prevent the court from performing its duty under Section 330(a)(4)(A).

**8.** The court expresses no view as to whether such a request would have been granted on these facts, as the court has no way of knowing whether the documents at issue here would satisfy the applicable requirements. In this regard, neither firm sought a preliminary determination that the attorney-client privilege applied to the time entries under FED R.EVID. 104.

applications were suitable for filing under seal or in a redacted form.[9] This could have protected the alleged privileged information while allowing the court to complete the review required by Section 330(a)(4)(A).

There was no indication that either law firm requested consent from LVMC to disclose some or all of the redacted entries. While the client might have justifiably declined to waive the privilege, a frank discussion about the types of information that could and could not be protected by a debtor in possession might have resolved LVMC's concerns. But the law firms' silence on why it was necessary that they invoke the privilege on behalf of LVMC for purposes of the interim fee applications precludes the court from knowing the answer to this question as well.[10]

 The court is aware that its oversight function may at times be in tension with either the attorney's obligation to protect confidential information or the attorney-client privilege. However, after reviewing Section 330(a)(4)(A)'s requirements and the applicable decisional authority interpreting them, the court concludes that when the court's duty to review conflicts with the attorney-client privilege, the court's duty to review prevails. To the extent that Jones Vargas and Gordon Silver believed that their only option was to redact the time en-

tries, the fees attributable to these time entries may represent amounts that the court is unable to approve and that Jones Vargas and Gordon Silver may never receive. Simply put, the existence of either confidential or privileged information, and the attorney's duty to protect both, does not excuse or alter the burden that an attorney must satisfy before a court may award fees under Section 330(a)(4)(A).[11]

## IV. Conclusion

Jones Vargas' and Gordon Silver's decision to submit interim fee applications containing redacted time entries prevented the court from performing the review required by Section 330(a)(4)(A). For this reason, the court denies, without prejudice, the portions of the interim fee applications that relate to the redacted entries; in all other respects, the court grants the applications. To the extent that Jones Vargas and Gordon Silver wish to request allowance of these fees or any additional fees from this court, their requests must comply with the standards detailed above.

This opinion shall constitute the court's order in this matter, as well as its findings of fact and conclusions of law under FED. R. BANKR.P. 7052.

**9.** Indeed, by failing to invoke the privilege in the application, and by failing to submit a privilege log or any written justification for invoking the privilege, it is arguable that the law firms waived any privilege as to the information they seek to protect from disclosure. *See, e.g., United States v. Martin,* 278 F.3d 988, 1000 (9th Cir.2002) ("A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted.") (citing *United States v. Osborn,* 561 F.2d 1334, 1339 (9th Cir.1977)).

**10.** An explanation from the law firms is necessary because it seems highly likely that the time entries in question could have been written in such a way as to safeguard the privilege and still allow the court to perform the required fee review.

**11.** This opinion is given without prejudice to reconsideration of the disallowance of fees should the law firms disclose information sufficient to allow the court to conduct the proper review as stated above.